## ANNA McGUIRE v. VILLAGE OF CALEDONIA.[1]

### May 3, 1918.

### No. 20,718.

**Trial — party may be compelled to produce evidence.**

    1. A trial court may properly require a party to produce in court an article which has probable value as evidence.

**Same.**

    2. It is not necessary to establish its admissibility before production in court.

**Same.**

    3. The language used by the court in ordering defendant to produce a paving plank in its possession was not prejudicial.

[1]Reported in 167 N. W. 425.

**Cross-examination concerning prior claims of personal injury.**

4. Ordinarily, it is proper to examine a claimant in a personal injury case as to the fact of having made previous claims for injuries. No prejudice is apparent from restriction of such inquiry in this case. Other limitations on cross-examination are considered and *held* not error.

**Question for jury.**

5. The question of contributory negligence was properly submitted to the jury.

Action in the district court for Houston county to recover $12,000 for injuries received in stepping into a hole in a walk at a street crossing. The case was tried before Kingsley, J., and a jury which returned a verdict for $2,200. From an order denying its motion for a new trial, Catherwood, J., defendant appealed. Affirmed.

*Duxbury & Duxbury,* for appellant.

*W. A. Deters* and *William S. Hart,* for respondent.

HALLAM, J.

Plaintiff recovered damages for an injury received while walking on a wooden cross-walk in the village of Caledonia. Defendant appeals.

The evidence sustains the verdict. There is testimony of disinterested witnesses, that there was a hole in the walk, due to decay; that defendant had notice of the defect; that plaintiff's foot was caught in this hole and that she fell and sustained a fracture of the cuboid bone of her left foot. The errors assigned relate to procedure at the trial.

1. After the accident the street commissioner of the village took the decayed plank into his custody. On the trial, plaintiff, after seasonable notice, asked the court to require defendant to produce it. The court first ordered it produced in a room adjacent to the court room for the inspection of plaintiff and her counsel, after which it was again taken away. Later the court ordered it brought into court and it was brought in and received in evidence. We have no hesitation in sustaining this order. We think, in fact, the court was unduly cautious in the limitations of his first order.

We are aware that the early common law rules as to compulsion of

testimony were very narrow. A party could not be compelled to testify or to produce evidence of any kind. A New York judge, in comparatively recent years in an action for breach of warranty on sale of a watch, refused to require the plaintiff on the stand to produce the watch though he had it in his pocket, and the supreme court sustained the ruling with the remark that any such practice "would be a new feature in our jurisprudence." Hunter v. Allen, 35 Barb. 42. Such reasons have prompted Mr. Wigmore to ask: "Were the judges of Charles II or George III, who themselves were but the followers of six centuries of royal judges the last generation, vested with the authority to apply old principles in new forms?" 3 Wigmore, Ev. § 2194.

It is the duty of the trial judge to facilitate the production of all evidence calculated to furnish the jury with a basis for intelligent action. He may now require parties to testify. He may subject their real property to view by the jury. He may require production of their private documents and of the private documents of witnesses who have no interest in the quarrel. He may, in proper cases, even subject the person of a party to examination. Surely then he may require a party to produce a common paving plank, if it have probable value as evidence. See Banks v. Conn. Ry. & Lighting Co. 79 Conn. 116, 64 Atl. 14; Reynolds v. Burgess Sulphite Fibre Co. 71 N. H. 332, 51 Atl. 1075, 57 L. R. A. 949, 93 Am. St. 535. Privilege may attach to some articles but none attaches to a paving plank.

2. The claim is made that it had not been shown that the plank was in the same condition as when it had been taken from the walk. Often questions of admissibility of the article in evidence can better be determined after it is produced than before. In case of documents, the court does not determine their admissibility in evidence in advance of their production. The same practice should apply to articles. This article was finally found to be proper evidence. It would be a strange result if we should now hold that it was error to order its production until after this was determined.

3. Exception is taken to the alleged "prejudicial" remarks of the court in the presence of the jury when the court ordered the plank brought in. Plaintiff's attorney examined several witnesses in an effort to find out who had the custody of the plank. It was traced into the possession

of Nels Blexrud, a bailiff, an officer of the court. The court said: "Send for Nels Blexrud. Tell him if he has that plank in his possession, to produce it in court." It does not appear to whom the remark was addressed, but Blexrud came, and he testified that he had taken it to the office of defendant's attorney. Thereupon the court told defendant's attorney, "you will produce that plank under the order of the court." The language seems to us courteous and proper. There was no impropriety in using it in the presence of the jury.

4. In his opening statement to the jury, counsel for defendant stated that defendant would prove fraud and intentional injury, and to that end would prove that plaintiff had asserted a claim for damages against the village because of a prior accident claimed to have been caused by getting her toe in a hole in a sidewalk some three years before; that that case had been tried three times, and the last trial, resulting favorably to defendant, had been had about three weeks before this injury was suffered. The court ruled that no evidence of this character would be received.

Ordinarly, it is proper, at least on cross-examination of a claimant in a personal injury case, to inquire as to other personal injury claims he has asserted. We think such examination might properly enough have been allowed in this case. But we cannot see that the exclusion of this evidence could have materially prejudiced the defense. It clearly appeared that the injury which is the basis of this case was real and not feigned. The claim is that the injury was self-inflicted, and the fact that plaintiff asserted a former claim is urged as probative evidence of that fact. It is not contended that the previous claim was based on a feigned injury. It is conceded that the basis of the claim was a fractured hip and that after three trials plaintiff was unable to recover any damages. Just how this painful and unprofitable experience would prompt plaintiff to inflict upon herself more broken bones is not clear to us. We think the defendant was not prejudiced by the exclusion of this evidence.

There is evidence that some time after the accident plaintiff was unconscious. Defendant claims that she simulated unconsciousness. To that end defendant offered proof that when she sustained her fractured hip she did not become unconscious. The connection seems to us so remote that the rejection of this evidence was not error.

5. Defendant claims that plaintiff's familiarity with this locality was such that she herself must have been negligent. The accident happened after dark. There is no direct evidence that plaintiff knew of this hole. This question was properly submitted to the jury.

Order affirmed.