# STATE v. MINNEAPOLIS COLD STORAGE COMPANY.[1]

October 28, 1921.

No. 22,420.

**Taxation — when books and papers of taxpayer need not be produced.**

1. It is within the power of a court to require a party to a tax enforcement case to produce his books and papers, if they contain evidence material to the issues to be tried, but not to enable the opposite party to examine them and use information gained from them as a basis for taxing the property of third persons.

**Production of books properly denied by trial court.**

2. The trial court was justified in its conclusion that the production of defendant's books was demanded in order to enable the representatives of the state to fish for evidence, and in declining for that reason to require their production.

**Appeal and error — reversal — limit to cross-examination discretionary.**

3. The latitude to be allowed in cross-examination is largely within the discretion of the trial court, and its action will not be reversed on appeal, except for a clear abuse of such discretion. There was no such abuse in the rulings complained of.

**Assessment of personal property — evidence supports finding.**

4. The evidence is sufficient to support the findings as to the value of defendant's personal property when it was assessed for taxation.

Citation in the district court for Hennepin county to recover $7,150.-73 as personal property taxes for the year 1919. The answer alleged that defendant's property was of the value of $1,425 and no more. The matter was heard by Bardwell, J., who made findings and ordered judgment for $30.73 against defendant. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Floyd B. Olson,* County Attorney, and *Frank J. Williams,* Assistant County Attorney, for appellant.

*Edwin S. Slater,* for respondent.

[1] Reported in 184 N. W. 854.

Lees, C.

This is a proceeding to enforce the payment of delinquent taxes assessed against defendant's personal property. Defendant had returned a list to the assessor showing that on May 1, 1919, its taxable property was of the value of $1,425. The assessor raised the amount to $100,-475. The board of equalization denied its application for a reduction. Defendant declined to pay the tax and resisted its collection on the ground that there had been a gross overvaluation of its property. The court found in its favor and the state has appealed from an order denying its motion for a new trial.

Defendant is a public warehouse company engaged in the cold storage business in the city of Minneapolis. On May 1, 1919, it had in its possession, stored in its warehouse, merchandise of a value greatly in excess of the amount of the assessment. Its vice president and general manager testified that it did not own any of the goods stored with it, and that all such goods were owned by other corporations or firms. Three of the employes testified that its books and records contained no entries showing that it had stored any goods in its warehouse, and that if it had done so there would have been such entries. The county attorney requested the court to direct the defendant to produce its books and records for inspection and to enable him to cross-examine the witnesses who had testified to the absence of such entries. Defendant's vice president testified that he knew the names of some of the concerns that had stored goods in its warehouse, and on cross-examination was asked to give the names. The court refused to order defendant to produce its books, and sustained objections to cross-examination of the vice president to ascertain the names of those who had stored goods with defendant. These rulings are complained of and furnish the principal grounds upon which a reversal is sought. Defendant justifies the court's refusal to compel the production of its books on four grounds: Because no effort was made to secure an inspection before the trial, under section 8447, G. S. 1913; because no subpoena duces tecum was issued; because there was no specific description of the books required or specification of the period of time to be covered by entries which might appear in them, and finally because the demand for their production was

150 M.—14.

made solely to enable the representatives of the state to embark on a fishing expedition to ascertain who were the owners of the goods with a view to taxing them.

It is within the power of a trial court to require the production of the books and papers of a party to an action which contain evidence material to the issues to be tried, Carson v. Hawley, 82 Minn. 204, 84 N. W. 746; McGuire v. Village of Caledonia, 140 Minn. 151, 167 N. W. 425, L.R.A. 1918D, 943, and we do not attach much weight to the first three reasons advanced in support of the court's ruling. But we think it may be sustained on the ground which defendant suggests last.

When the demand was made, the court, after inquiry respecting the use proposed to be made of the books, informed the county attorney that he was not prepared to rule that they should come in for the purposes of a fishing expedition. Defendant's counsel inquired whether the county attorney was willing to have the books examined without making a record of the names of the owners of the goods, unless the books showed that defendant was an owner. He replied that, if the books disclosed that other persons owned the goods and that they had not been taxed, he would not stipulate that he would not disclose the facts or do his duty in collecting the taxes. Thereupon the court ruled that defendant should not be compelled to produce the books. Later on the same question came up again, when defendant's counsel offered to permit an examination of its record cards, on condition that the names of the owners of the goods entered thereon should not be used by the state. The county attorney declined the offer, on the ground that it was incompatible with the discharge of his official duties to make such an agreement. The court adhered to its previous ruling, giving as the reason that on the statement of the county attorney, if he felt it incumbent to use any knowledge he might acquire from an inspection of the books and records in enforcing the payment of taxes by persons other than the defendant, it need not produce them. Finally, when another request for their production was made, the court suggested the appointment of an accountant to make a thorough examination to ascertain whether the books showed anything not in accordance with the testimony of defendant's witnesses, but not for the purpose of disclosing

the names of defendant's patrons. The county attorney declined to accede to the suggestion, saying: "No, I don't want to enter into any agreement wherein if a leak of any kind occurs I will be criticised, and I don't want to acquire any information that I can't use freely." The court then refused to modify its prior rulings, saying they had been made for the reason that the county attorney intimated that he felt obliged to use any information he might gain from the books in proceeding against the owners of goods whose names were thus ascertained.

We think it sufficiently appears that the real purpose of the demand for the production of the books was to gather information from them to be used as a basis of tax proceedings against third persons rather than an expectation that the entries would contradict the testimony of defendant's witnesses. Such an inquisition was not relevant to the issues on trial.

With respect to the rulings when defendant's vice president was cross-examined, the same situation was presented in a somewhat different form. He testified that defendant did not own any of the goods in its warehouse on May 1, 1919, and had no interest in them. When asked who owned them, defendant objected, and the objection was sustained. He was asked whether the Kildal Fish Company or Armour & Company owned any of them, and this was objected to and the objection sustained. Undoubtedly a witness who has testified that the party calling him had property in its possession, but did not own it, may be asked who the owner was, in order to test his credibility and lay a foundation for possible impeachment. If such was the purpose of the cross-examination, the court should not have sustained the objections.

But it is quite evident that the questions were put to elicit information to serve the same purpose as the repeated demands for the production of the books. The relation of a public warehouseman to his patrons is such that he is not bound to become an informer when called upon to disclose their names in order that they may be taxed. At least such was the case until the legislature made it the duty of warehousemen to furnish such information. This has been done by the enactment of chapter 527, p. 998, Laws of 1921. The fact that such legislation was deemed necessary, indicates that prior to its enactment no

such duty existed. In its absence public officials ought not to be permitted to accomplish by indirection that which could not be done directly. The latitude to be allowed in cross-examination is largely within the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of such discretion. Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265; State v. Seeling, 126 Minn. 386, 148 N. W. 458. There was no abuse of discretion in the rulings complained of.

It is urged that, since the assessment was presumptively correct and the burden of proving the contrary rested upon the defendant, the evidence it produced was not sufficient to sustain the finding that the full and true value of its personal property was $1,425 and no more. We cannot so hold. True the testimony of defendant's bookkeeper and clerks was merely negative, for they had no knowledge of the amount or value of their employer's property. But the testimony of the vice president was direct and positive and if true was sufficient to sustain the finding in question. The other assignments of error are unimportant and need not be discussed. The order denying a new trial is affirmed.