CLAUDE F. O'NEILL v. MINNEAPOLIS STREET RAILWAY
COMPANY.
HARRY JAFFA, *d.b.a.* JAFFA TRANSPORTATION
COMPANY v. SAME.[1]

December 31, 1942.

No. 33,164.

[1]Reported in 7 N. W. (2d) 665.

515

*Robins & Davis* and *M. Arnold Lyons,* for appellants.
*Ralph T. Boardman* and *John F. Dulebohn,* for respondent.

PETERSON, JUSTICE.

These actions arise out of a collision between a tractor-trailer (an automobile truck unit) and a streetcar. Plaintiff O'Neill was the driver of the tractor-trailer. He sues for personal injuries.

Plaintiff Jaffa Transportation Company owned the tractor-trailer and sues for damage caused to it by the collision.

The collision occurred just before six p. m. on October 29, 1940, at the intersection of Stinson Boulevard and Summer street in Minneapolis. The boulevard extends north and south. In the center is a parkway, the middle 16.7 feet of which are occupied by streetcar tracks. There are paved roadways on the east and on the west side, each 32 feet wide, with small strips of boulevard, and on the extreme outside a sidewalk about six feet wide. Both sides of the roadways have curbing. The overall width of the boulevard is about 182 feet.

Summer street extends east and west and intersects Stinson Boulevard at right angles. It is about 66 feet wide with a 30-foot roadway in the center and a strip of boulevard and a sidewalk on each side.

The property adjoining Stinson Boulevard on the west side in the block south of Summer street is occupied by a large building known as the Northwest Terminal, in which a firm known as Ed. Phillips & Sons Company has its place of business. The Phillips premises are between 400 and 500 feet south of Summer street.

Pursuant to statutory authority, the city of Minneapolis designated the roadway on the west side of Stinson Boulevard as a one-way road for southbound traffic, and the one on the east side as one for northbound traffic. Numerous conspicuous highway signs have been erected on each side to show clearly that each roadway has been so designated and indicating the direction in which traffic is required to travel thereon.

At about 5:50 p. m. O'Neill left the Phillips premises with some merchandise in the trailer. Claiming that it was inconvenient for him to turn south because of the manner in which an automobile truck was parked there, he went north toward Summer street on the west roadway in violation of the designation that it was for southbound traffic. It was then dark or nearly so. Both the streetcar here involved and the tractor had their lights on.

When O'Neill reached the intersection at Summer street he turned right to cross to the east roadway for northbound traffic. While engaged in making the turn and when he was 30 feet west of the streetcar rail nearest him, he saw the streetcar in question approaching from the south approximately three-fourths of a block, or about 350 feet, away. He kept going. When he got to the first rail he saw the streetcar's headlight about 100 feet away approaching at an estimated speed of 30 miles per hour. He stepped on the gas to get across the tracks. The left front side of the streetcar hit the right front of the trailer. After the collision the trailer was turned so that it faced northeasterly with the right front wheels between the car tracks at a point along the south line of the sidewalk on the north side of Summer street. The tractor was facing more easterly and was just north of the sidewalk. O'Neill was thrown out of the cab of the tractor. He sustained severe personal injuries, and the tractor-trailer was damaged.

Plaintiffs claimed that the motorman was guilty of negligence. Defendant claimed that O'Neill was guilty of contributory negligence. There were verdicts for defendant, and plaintiffs appeal.

Here plaintiffs assign numerous errors relating to the rulings below on the admission and exclusion of evidence and to the charge of the court. These we shall discuss separately, with such further statement of the facts as may be necessary in connection with each question considered.

■ A question put to the witness Nelson, who was riding nearby on Stinson Boulevard in one Vork's truck, whether he heard a screech of the brakes of the streetcar before the collision, was ruled out upon the ground that there was no foundation. In answer to the preceding question whether at any time just prior to the collision he had heard any screech of the brakes, he answered "No." No reason was suggested for repeating the question. Where a witness has answered a question in a straightforward manner, repetition of the question should be ruled out. A party is not entitled as a matter of right to have a witness repeat his testimony.

Repeating a question once answered is superfluous and therefore improper. Supornick v. N. W. Nat. Ins. Co. 190 Minn. 19, 250 N. W. 716.

In this connection it is significant that Vork also testified that he heard no such screeches.

■ A question put to Vork as a witness whether he heard a streetcar warning bell prior to the accident was ruled out upon the ground that failure to warn was not pleaded. We have examined the complaint and have concluded that the general allegations of negligence were comprehensive enough to include, if material, failure to warn. The reason given for the ruling was wrong, but the ruling itself was right. The purpose of a warning is to apprise a party of impending danger of which he is not aware, to enable him to protect himself against it. Where he is fully aware of the existence of the danger, a warning is unnecessary. Blomberg v. Trupukka, 210 Minn. 523, 299 N. W. 11. The rule is applicable to cases of collisions between automobiles and streetcars at intersections. Schrankel v. Minneapolis St. Ry. Co. 144 Minn. 465, 174 N. W. 820. Of course mere knowledge of the streetcar's presence on the street is entirely different from knowledge, as here, of its presence and the danger incident to its operation. *Cf.* Newton v. Minneapolis St. Ry. Co. 186 Minn. 439, 243 N. W. 684, and Turner v. Minneapolis St. Ry. Co. 153 Minn. 509, 190 N. W. 986, where we held that a failure to warn may be negligence notwithstanding the party's knowledge of the presence of the streetcar, if he was not aware that its operation under the circumstances involved danger of harm to him, as where the streetcar was approaching from behind or where it was about to pass on another track a streetcar from which the party has just alighted. Here the evidence shows that O'Neill was fully aware of the fact that the streetcar was approaching and of all the dangers incident to its operation under the circumstances. He saw it when he was turning his truck at a distance 30 feet from the westernmost rail, and he saw it again 100 feet distant when he had reached the rail. Under the circumstances, to ring the bell

would not have apprised him of anything with respect to the facts or the dangers incident thereto which he did not then fully know.

██ The trial court refused to allow plaintiff to impeach the witness Sieckert with a prior written statement made by him about four hours after the collision which plaintiffs claimed contradicted his testimony. The statement was ruled out upon the ground that it did not "impeach much."

The statement was to the effect that the witness was a passenger on the streetcar; that, although he could not accurately state the speed of the streetcar, he estimated that it was going about 20 miles per hour; that it was dark at the time; that for only an instant he saw the Jaffa unit facing east when the motorman applied the brakes; that the force of the impact threw the motorman backwards; that it drove the tractor some distance across the northerly curb of the street; that it was facing northeast at that time; that when the streetcar and the tractor-trailer came to rest the streetcar was jammed right up against it with the left front corner of the streetcar against the tractor-trailer where the two units join; and that the driver, O'Neill, was lying on his stomach about two rods distant.

His testimony was substantially the same as his prior written statement, except that the court ruled out a question whether the impact of the streetcar drove the tractor-trailer across the north curb. He testified in great detail. He identified the location of the tractor-trailer after the collision from a photograph taken immediately after the collision. The trailer faced northeast just as he had stated. The tractor faced more easterly, but it was where he stated it was. He admitted that he had made all the statements in the writing about which he was interrogated. He testified that all such statements were true. He seemed to be in doubt as to whether the tractor-trailer was facing east when it was on the track, but he had no doubt as to all the other facts and that it was facing northeast after it was hit. It is not clear whether he distinguished between east and northeast with respect to the tractor-trailer's direction when it was on the track. Some

of his answers, standing alone and unexplained, seemed inconsistent with his prior statement. This was due to the manner in which he was interrogated. Upon more complete examination, his testimony squared precisely with the statement. There was no substantial difference between his testimony and his prior written statement, either by way of addition or omission. One did not vary from the other.

A prior contradictory statement is always admissible to impeach a witness. The theory of such impeachment is that the witness' prior version shows that he spoke erroneously either when he gave the prior statement or when he testified. Both cannot be correct. The inconsistency constitutes the basis for impeachment. In the nature of things, where there is no inconsistency between the prior statement and the testimony, there is no basis for impeachment. State v. Gallehugh, 89 Minn. 212, 94 N. W. 723; 70 C. J., Witnesses, p. 1054, § 1241. Whether the witness' testimony is in fact inconsistent with his prior statement should be determined not from isolated answers, but from his testimony as a whole.

"As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done. On a comparison of the two utterances, are they in effect inconsistent? Do the two expressions appear to have been produced by inconsistent beliefs?" 3 Wigmore, Evidence (3 ed.) p. 725, § 1040. Since the witness' testimony, when considered as a whole, was not inconsistent with his prior statement, the statement could not be used to impeach him.

Erickson v. Erickson & Co. 212 Minn. 119, 2 N. W. (2d) 824, is not to the contrary, since in that case there was a real inconsistency between the witness' testimony and his prior statement because of the fact that he testimonially stated, in order to establish a liability in his favor, a vital and important fact which he had omitted from his prior written statement and which it would have been natural for him to include therein. The distinction be-

tween the cited and the instant case is clear from the following excerpt (212 Minn. 125, 2 N. W. [2d] 827):

"A witness may be impeached by contradicting his testimony. Failure to assert a fact when it would have been natural to assert it permits an inference of its nonexistence. The nonexistence of a fact established by the inference arising from such an omission to assert may be used to contradict an assertion of its existence. A witness may be impeached by a prior statement, either written or oral, purporting to narrate all the facts with respect to a particular event, which omitted to refer to a vital or important fact to which he testified."

Whether a prior statement does in fact impeach a witness does not depend upon the degree of inconsistency between his testimony and his prior statement. If there is any variance between them, the statement should be received and its effect upon the credibility of the witness should be left to the jury. Tinklepaugh v. Rounds, 24 Minn. 298; 6 Dunnell, Dig. § 10351c.

We sustain the exclusion of the prior statement here, not upon the ground given below that the prior statement did not impeach *much*, but upon the ground that, for lack of inconsistency between the witness' testimony and the statement, it did not impeach *at all*.

■ The evidence shows beyond dispute that the tractor-trailer had entered the intersection when the streetcar was approximately 350 feet distant. The court below refused to charge on statutory right of way. For purposes of decision we shall assume, in accordance with plaintiffs' contentions, that Stinson Boulevard, with its two roadways separated by the parkway, constituted one highway; that the area between the extended lines of curbs of Summer street and of the curbs along the outer sides of the boulevard constitute an intersection (see Minn. St. 1941, § 169.01, subd. 36 [Mason St. 1940 Supp. § 2720-151(35)]), and that the right of way rules at intersections apply to streetcars the same as to auto-

522

mobiles (see *Id.* § 169.03 [§ 2720-155(e)]; Yien Tsiang v. Minneapolis St. Ry. Co. 213 Minn. 21, 22, 4 N. W. [2d] 630).

Plaintiffs claim that they were entitled to the right of way under *Id.* § 169.20, subd. 1 (§ 2720-196[a]), which reads:

"The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway."

Plaintiffs do not come within the statute because the tractor-trailer entered the intersection not from a *different highway,* but from the *same highway.* In other words, the streetcar was bound to yield the right of way under the conditions prescribed by the statute to a vehicle entering the intersection from Summer street, a *different* highway from that on which it was proceeding, but not to one entering the intersection from Stinson Boulevard, the *same* highway on which it was proceeding.

The section in question is part of the highway traffic regulation act, *Id.* §§ 169.01 to 169.97 (§§ 2720-151 to 2720-294), which regulates in great detail the operation of motor vehicles on public highways and which contains specific requirements as to such matters as speed, driving on right side of road, overtaking and passing, turning, starting, stopping, parking, signalling, right of way, and other pertinent matters.

A specific rule for vehicles making a left turn is prescribed by *Id.* § 169.20, subd. 2 (§ 2720-197), which reads:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but the driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn, and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn."

No specific rule is prescribed for vehicles entering an intersection contrary to law, as the tractor-trailer did in the instant case.

Plaintiffs claim that they were entitled to the right of way under § 169.20, subd. 1 (§ 2720-196[a]), for the reason that after the tractor-trailer turned so that it faced east its position in the intersection was no different from that of an automobile entering the same on Summer street from the west side of Stinson Boulevard. But the same would also be true of an automobile proceeding south on Stinson Boulevard after making a left turn in the intersection. If plaintiffs were entitled to the right of way, so would be any automobile making a left turn after it was facing across the intersection. Yet a different and specific rule is prescribed for the latter by § 169.20, subd. 2 (§ 2720-197). Plaintiffs' argument fails because the act in question prescribes specific rules for different operations. The statutory right of way rule takes into consideration not only the location of a vehicle upon a highway but such other factors as the place from which it is coming and that to which it is going. We are not at liberty to say that a rule prescribed for one situation should apply to another which does not come within its terms.

For lack of a specific statutory rule applicable to the operation involved in the instant case, the ordinary principles of negligence law apply. The situation is different from that where overtaking vehicles, on a highway not divided into roadways by a parkway down the middle, as here, attempt to pass at an intersection by cutting over in front of others to get into a lane of traffic on the right. Liability here should be determined by the rules of negligence and contributory negligence without regard to right of way under the statute in question.

Plaintiffs were not entitled to the statutory right of way under § 169.20, subd. 1 (§ 2720-196[a]), and the requested instruction was properly refused.

■ It was not error to read as part of the instructions § 169.04(4), (§ 2720-158[a]4), which authorizes local authorities within certain municipalities (which includes Minneapolis) to designate certain

highways as one-way roadways and to require all vehicles thereon to move in a certain specified direction.

Where a statute is applicable, it is generally proper to read it. Lustik v. Walters, 169 Minn. 313, 211 N. W. 311; Lahiff v. Mc-Aloon, 152 Minn. 517, 189 N. W. 435.

Here the one-way statute was applicable. The accident occurred during darkness or approaching darkness. The motorman was required to take notice of conditions there existing. He might well be required to see vehicles going south on the west roadway and those approaching from the west on Summer street, because in the one instance the lighted headlights would be turned toward him and in the other across his path. But in the instant case the headlights on the tractor were turned north, a direction in which it was not customary for vehicles to proceed at that place; and the unit, being something like 32 feet in length overall, apparently made a long sweeping turn to the right before its lights were across the streetcar tracks. Some appreciable turn was required to be made before the motorman would appreciate that the unit was about to cross in front of him. The matter went not only to the motorman's negligence, but to O'Neill's contributory negligence also. If the motorman was in any way misled or failed to see the tractor because of the direction in which its headlights cast their light, that condition might be a factor which caused or helped to cause the accident within the rule of Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649, and subsequent cases.

There was no error in denying plaintiffs' request for a charge that O'Neill was not required to anticipate negligence on the part of the motorman, and that he had a right to assume, until the contrary appeared, that the streetcar would be operated without negligence. The request embodies in substance statements from our decisions where we have discussed the sufficiency of evidence to show negligence and contributory negligence. Mahowald v. Beckrich, 212 Minn. 78, 2 N. W. (2d) 569; Manos v. St. Paul City Ry. Co. 173 Minn. 402, 217 N. W. 377, and similar cases. In Davis v. Minneapolis St. Ry. Co. 173 Minn. 186, 217 N. W. 99, a charge

substantially the same as that refused below was sustained against the objection that the driver of an automobile might indulge in such an assumption until the contrary appeared *"inevitable."* But that case did not hold that such a charge is required to be given.

A party is entitled only to a charge fairly submitting the issues. Sometimes a charge prepared by counsel may be desirable. Sometimes it is better that the trial court embody the charge in language of its own choosing. A trial judge has a wide discretion in the matter. Sohns v. M. B. Hubbard Grocery Co. 163 Minn. 187, 203 N. W. 782. Here the questions of negligence and contributory negligence were clearly and amply submitted. It did not include any statement that either party was entitled to indulge in any such assumption as that embodied in the requested instruction. Nor did it need to. In O'Rourke v. Duluth St. Ry. Co. 157 Minn. 187, 195 N. W. 896, we held that where the charge correctly submits the issues of negligence and contributory negligence a request to give an instruction embodying the substance of that here requested, but denied, was properly refused.

■ Challenged also is the portion of the charge that in passing on the question of negligence the jury could take into consideration the fact that streetcars operate on rails and cannot turn out to pass another vehicle, and that it is more difficult for a streetcar to stop by reason of its weight. The first part of the instruction in question embodies a fact which everybody knows and which was in effect approved in Luck v. Minneapolis St. Ry. Co. 191 Minn. 503, 515, 254 N. W. 609. The second part thereof is directly opposed to Syck v. Duluth St. Ry. Co. 146 Minn. 118, 177 N. W. 944, 945, where we said: "In crossing street intersections, there is no perceivable reason why the same regulation should not govern street cars and other vehicles. Street cars are stopped or slowed down about as readily as any other vehicle of equal speed operated upon city streets."

We do not deem the second part of the charge prejudicial. After all, it was only a general observation. True, there was no factual basis for such an instruction. For that reason alone, if not for

others, it should not have been given. But the instructions left it to the jury in passing on the questions of negligence and contributory negligence to determine solely from the evidence the stopping distance of both vehicles and to take into consideration their respective weights. The evidence with respect to the distance within which the respective vehicles could be stopped at the speeds the respective parties claimed they were traveling immediately prior to the collision was 12 to 15 feet for the tractor-trailer and 48 to 50 feet for the streetcar. It was clear that the jury understood that they were to decide the questions submitted solely on the evidence and that, if they did so, the observation referred to could have done no harm. For that reason, we refuse to upset the verdict.

Some other points have been raised, but they are so clearly without merit that we refrain from prolonging the opinion by discussing them.

Affirmed.

