ELSIE ZUBER v. NORTHERN PACIFIC RAILWAY COMPANY
AND ANOTHER.
CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY,
ADDITIONAL DEFENDANT.[1]

January 20, 1956.

No. 36,446.

[1]Reported in 74 N. W. (2d) 641.

158

*Joseph L. Bard* and *Donald Rudquist,* for appellant.

*M. L. Countryman, Jr., Earl F. Requa,* and *W. S. Lycan, Jr.,* for respondent Northern Pacific Railway Company.

*Harry S. Stearns, Jr.,* and *Stearns, Baumgardner & Stearns,* for respondent The Pullman Company.

*Thomas J. Stearns,* for respondent Chicago, Burlington & Quincy Railroad Company.

NELSON, JUSTICE.

This an action for personal injuries arising out of a railroad accident.

The plaintiff Elsie Zuber left Chicago accompanied by her daughter Florence Cummings at 11 p. m. July 16, 1949, as a passenger on the train known as the North Coast Limited. This train was under the control of the Burlington Railroad from Chicago to St. Paul and the Northern Pacific from St. Paul to Seattle, Washington, which was the plaintiff's destination. The plaintiff and her daughter occupied a roomette on one of the cars owned and serviced by the Pullman Company. Their baggage consisted of two large suitcases, a third one of medium size, and a small overnight bag. The Pullman porter first placed them in the luggage rack so that one extended over the shelf. The one which protruded was a heavy suitcase belonging to the daughter. The plaintiff's husband, being present while the plaintiff and her daughter were getting settled in the car, changed this arrangement so that none would protrude by putting one on the floor. The porter put this one back on the rack as it had originally been placed by him.

The plaintiff claims that the next morning, while the train was in St. Paul and shortly after she had arisen, one of the suitcases fell down from the rack onto her head and neck and that as a result she suffered injuries to her person. She first brought an action to recover damages against the Northern Pacific and the Pullman Company and later joined the Burlington as an additional party defendant. To place liability on the Pullman Company, plaintiff on this appeal relies on certain assurances which her testimony indicates the porter made to her in the roomette, in the presence of her daughter, when the bags were rearranged.

A verdict was returned in favor of all the defendants, and plaintiff moved, in the alternative, for judgment for the plaintiff on the

merits notwithstanding the verdict or for a new trial on all issues. The court denied the motion and plaintiff appeals from the order, seeking a reversal of the order denying her motion for a new trial.

We are bound to regard the evidence in the light most favorable to the parties prevailing below and also to apply the rule that where the evidence is ambiguous, as some of it is here, it must be construed in favor of the party for whom the verdict is rendered.[2]

At the trial the plaintiff at first testified that the suitcases or bags rode properly from Chicago to St. Paul, but in her deposition taken earlier she had stated that they were jiggling and shaky and that she saw the bags extending over the edge of the rack and even watched them shaking. Finally at the trial she admitted that she could not be sure whether they had shaken and jiggled or not. The plaintiff's daughter testified that she and her mother did worry about the bags for a while, but that they soon forgot about them. At the trial the plaintiff testified that the bag fell at a time when the train gave a terrific jerk. In her deposition taken earlier she testified that there was a coupling movement at the time the suitcase fell, that "there was nothing unusual" about it and that when she got up she "felt something kind of strong, like it was coupling a car on or something and the bag came down"; also that the movement felt at that time was the normal movement of the train and one that she had felt at other times. Two days after the accident the plaintiff told a representative of the Northern Pacific at Seattle that the train had kind of jerked a little bit when it started, but that she did not pay much attention to it; that she thought they made a little turn, nothing unusual about the curve or the speed of the train; that they were going like they always did; and that she did not notice any unusual movement or jerk of the train. However, at the trial she said that "all at once the train went a terrific jerk, I thought it was coming apart and this came right down on me." She stated that when she got up in the morning the train was standing still and that, when the suitcase fell down and this strong or terrible jerk occurred,

[2]Dow-Arneson Co. v. City of St. Paul, 191 Minn. 28, 253 N. W. 6; Borg & Powers Furniture Co. v. Reiling, 213 Minn. 539, 7 N. W. (2d) 310; 14 Dunnell, Dig. (3 ed.) § 7159, and cases cited.

the train was moving and that it had then been moving about 10 or 20 seconds. She said the train continued on and next came to a stop at Minneapolis.

The only testimony produced as to the placing of the bags and as to what occurred to the bags on the trip in connection with the alleged accident was by plaintiff and her daughter. The Pullman conductor who came on the train at St. Paul, together with a Pullman porter and two other passengers, testified that he did not recall any unusual train movement and no terrific jerk. The Pullman porter who had placed the suitcases in the rack in plaintiff's roomette did not testify at the trial. He was not called as a witness by either of the parties. The record indicates that he severed his employment with the Pullman Company on December 28, 1949, and was never again in its employ.

It is difficult to determine with any degree of accuracy, on the basis of the record, the manner in which the luggage was placed on the rack by the Pullman porter. The fullest testimony on this point is that of the plaintiff's daughter. A replica of the rack in which the luggage was placed was put in evidence by the Pullman Company and the actual suitcases involved in the accident were produced at the trial so that the jury was in a position to get a fairly accurate picture of the way the bags were arranged in the rack; to consider the alleged assurances made by the porter and the warning that the jiggling of the bags in the rack provided during the trip between Chicago and St. Paul; to apply the testimony of the plaintiff and her daughter; and to draw their inferences therefrom.

Records were produced showing arrival and departure of trains at St. Paul on July 17, 1949. The train on which plaintiff and her daughter were passengers arrived at St. Paul at 8:07 a. m. and left St. Paul for Minneapolis at 9:16 a. m. Plaintiff in her deposition had testified that she got up between "half past 7:00 and a quarter to 8:00 about." At the trial she said sometime between 7 and 9 a. m. When the deposition was taken, the daughter said that the accident happened around 8 a. m. At the trial the daughter stated it happened about between 8 and 9:30 a. m. Since the train under the operation

of the Northern Pacific did not leave the depot until 9:16 a. m., the jury was left to speculate whether the accident happened while the Northern Pacific was in control or whether it happened as the train came into St. Paul from Chicago, while the Burlington was in control. The train had stopped for a stop board at a railroad crossing on coming into the St. Paul yards; then on a signal proceeded over the crossing and over a switch and again stopping; and on another signal backed 3 to 4 blocks into the St. Paul depot. The plaintiff's testimony on her coming into St. Paul was to the effect that just as she got dressed, and about that time, and just before the accident, she heard someone yell, "St. Paul." The daughter also testified that she thought the train was coming into St. Paul, and after that, the train stopped when someone yelled "St. Paul"; that the accident occurred shortly afterward. Searching the record it would appear that the evidence is uncontradicted that the station call "St. Paul" must have been made either shortly after or just before the accident happened. Upon that testimony it would appear that at that time the train could be coming into St. Paul rather than leaving St. Paul.

It was stipulated at the trial that, if the accident occurred as the train was coming into the St. Paul station, the defendant Burlington would be liable, and if it occurred as it was leaving St. Paul for Minneapolis, the defendant Northern Pacific would be liable, dependent upon liability being established. The record discloses that plaintiff's counsel in his opening statement said: "The best we can get from evidence is that the accident occurred as the train was leaving St. Paul and made no further stops until it got to Minneapolis." The plaintiff insists that the train came to a stop "next" after the accident, at Minneapolis; the daughter insists that Minneapolis was the stop following the accident. One bit of evidence that seems to stand uncontradicted is the depot records showing that the train, after it came to a stop following the trip from Chicago, remained at the station in St. Paul for more than an hour before it departed for Minneapolis.

Due to the uncertainty as to the time of the alleged accident disclosed by the plaintiff's testimony, the court refused to direct a

verdict for either carrier and ruled that the conflict in the testimony as to when and where the accident happened should be resolved by the jury as a fact question.

Numerous questions are presented on this appeal.

Regarding the question of the negligence of the Pullman porter in placing the bags in the luggage rack, it seems clear to us that the circumstances do not spell out negligence as a matter of law primarily because the luggage rode safely for approximately 9 hours while the plaintiff and her daughter occupied the roomette to themselves. The husband had rearranged the luggage and they had observed it jiggling after the porter put it back; they thought about that fact for a period of time; and then finally they paid no more attention to it. The assurances of the porter, which the plaintiff claims to have relied upon, cannot under the circumstances be anything more than one of the factors to be considered in determining whether or not plaintiff was contributorily negligent or assumed the risk. The testimony of the plaintiff and her daughter as to the suitcase provided sufficient discrepancies so that the jury became entitled to pass upon the value as well as the credibility of the testimony and resolve the fact questions in dispute.

In the case of Adams v. Louisville & Nashville R. Co. 134 Ky. 620, 121 S. W. 419, based upon a similar state of facts, the plaintiff, following the accident, left the train at the end of the journey without complaining to anyone, apparently supposing at the time that she had suffered no substantial injuries. For that reason the court instructed the jury peremptorily to find for the defendant. Plaintiff appealed, the judgment was reversed and the cause remanded for a new trial. The court said in the opinion that whether the plaintiff was guilty of contributory negligence in not observing the suitcase or in sitting under it without objection was clearly a question for the jury. The court also said that in the matter of determining whether there was any evidence of negligence on the part of the servants of the railroad company presented a question for the jury. Other cases involving similar facts were cited and considered by the Kentucky court in that case.

Cases in which the question of contributory negligence and assumption of risk in railroad travel has been passed upon by this court are numerous and we cite as instances Fullerton v. Chicago G. W. R. Co. 159 Minn. 475, 199 N. W. 93; Olson v. St. Paul & D. R. Co. 45 Minn. 536, 48 N. W. 445. The duties of carriers and passengers are reciprocal. If carriers are held to the highest degree of care for the safety of passengers, the latter should be held to the exercise of ordinary care to protect themselves. Butler v. St. Paul & D. R. Co. 59 Minn. 135, 60 N. W. 1090; Jones v. Chicago, M. & St. P. Ry. Co. 42 Minn. 183, 43 N. W. 1114.

A litigant who offers himself as a witness in his own behalf, giving testimony upon the crucial facts in the case of which only he has firsthand knowledge, must expect that, when and if it is self-contradictory, vague, or equivocal, the jury, exercising its full prerogative of weighing the evidence, may deny him a verdict as well as it might in its absence find one in his favor. The jury passing upon the conflicts in the testimony and the credibility of the witnesses may under such circumstances find from the testimony which is the most unfavorable to him that the verdict ought to be against the party not for him.[3] It has been said by some courts and spoken of as a truism in the legal profession that "The testimony of a witness is not stronger than it is made by his cross-examination."[4]

The credibility of witnesses and the weight to be given to their testimony are solely for the consideration of the jury. Negligence must be proved by direct evidence or by facts from which negligence can reasonably be inferred. In the absence of such proof negligence will not be presumed. If there is a conflict in the evidence as to whether or not negligence, contributory negligence, or assumption of risk exists, as a proximate or contributing cause, the question is for the jury.

 Counsel for the Northern Pacific made the following statement in front of the jury before plaintiff had rested:

---

[3]See, Davis v. Akridge, 199 Ga. 867, 36 S. E. (2d) 102.

[4]State v. Ritz, 65 Mont. 180, 187, 211 P. 298, 300; Vidal v. Kensler, 100 Mont. 592, 51 P. (2d) 235.

"Before the plaintiff rests, your Honor, I would like to say, that is the way the case is going, we are not going to call any of our trainmen as witnesses. Of course, we have their names and addresses if you want to call them as your witnesses for cross examination. You, of course, can do that but I wanted to tell counsel that before he rested, your Honor."

Plaintiff contends that this statement should have been stricken from the record by the court. At the close of all the testimony, requests to charge were presented to the court in chambers. The procedure there is fully set out in the record. A requested charge on the matter of present employees of defendants who were not called or made available as witnesses at the trial nor their absence accounted for was discussed, both as to comments thereon by plaintiff's counsel in his argument and the court's instructing on the adverse inferences to be drawn therefrom.

This court has applied the rule that:

"* * * where an employe who could give important testimony relative to issues in litigation is not present and his absence is unaccounted for by his employer, who is a party to the action, the presumption arises that the testimony of such employe would be unfavorable to his employer."

Ellerman v. Skelly Oil Co. 227 Minn. 65, 70, 34 N. W. (2d) 251, 254, 5 A. L. R. (2d) 886, and cases cited therein; Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166, 70 A. S. R. 341. This rule, however, has no application where the witness is no longer in the employ of the party to the litigation. When the evidence discloses such to be the fact and the burden of proof is upon the plaintiff, there is no longer any obligation upon a defendant employer to produce and present his former employee as a witness.

So far as the record in this case is concerned, it is clear that the porter who placed the suitcases in the rack in the roomette was no longer in the employ of the Pullman Company; that he had not been in its employ since December 28, 1949; and that he was not a pensioned former employee. No further discussion is necessary re-

garding this porter as being an absent witness since the above-stated rule is limited to those cases where such witness is actually in the employ and under the control of the party at the time of the trial. Each side has a right to bring in a former employee and present him as a witness.

The record indicates that the court did not order plaintiff's counsel to refrain from commenting upon the failure of the defendants to call certain of their present employees as witnesses and that their absence created a present presumption that their testimony would be adverse. The court did state, however:

"If you do—I will state that it was stipulated, a stipulation was made in the record that the names and addresses of the crew would be made available to plaintiff if she desired to call them as witnesses."

Plaintiff's counsel was nevertheless, subject to the comment which the court said it would make, left free to comment on the absence and the adverse inferences that might be drawn therefrom.

A party, of course, is under no legal or moral duty to present any more evidence than he considers necessary to establish his view of the controversy, yet an unfavorable inference may arise against him for failure to produce a particular witness. State ex rel. Rockwell v. State Board of Education, 213 Minn. 184, 6 N. W. (2d) 251, 143 A. L. R. 503. The decisions seem to make it clear, however, that a permissive rather than a mandatory deduction is what this court had in mind, an inference that may be drawn from the facts and not a true deduction. The terms presumption and inference have been used indiscriminately in discussions regarding the failure to produce a natural witness.[5] The term presumption as used here is misleading for it is in fact only an inference which may be drawn from the circumstances disclosed by the evidence, and the proper function of the inference is not to act as a substitute for affirmative proof but rather to be used by the jury in weighing the evidence actually produced. Lewis v. Chicago G. W. R. Co. 124 Minn. 487, 491, 145 N. W. 393, 395; Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 452, 74 N. W. 166, 170, 70 A. S. R. 341, 350. Such inferences may

[5]See, 33 Minn. L. Rev. 423 to 425, and cases cited therein.

arise from the unexplained failure of a party to produce a witness who has superior knowledge of the facts in issue, who is apparently within the power of the party to produce, and who would apparently naturally favor that party.[6]

It is true that at the time of the trial plaintiff had the opportunity to obtain the names of all defendant's employees on the train under Rule 33 of Rules of Civil Procedure and to take their depositions to discover what they knew about the accident under Rule 26, and to call them for cross-examination as adverse witnesses at the trial without being bound by their testimony under Rule 43.02.

The court did not comment on the absence of witnesses in his charge to the jury except to state:

"Now, as to the defendants, the Pullman Company denies it was negligent in any respect. I presume that I can say that it denies the placing of the luggage in the position it was, although it has not produced the porter who was on the train. Now, with reference to its failure to produce the porter, there is some evidence offered to show that the porter is no longer in its employ. For that reason, unless it can be shown that the company knows where the witness is, no presumption arises against it for its failure to so produce him."

The record indicates that the case went to the jury in the afternoon and that during that evening the jury returned for additional instructions. At that time one of the members of the jury made the following inquiry:

"I was wondering why they didn't get the porter that was on the train, on the car."

The court answered:

"Well, he is no longer in the employ of the Pullman Company, and as I charged you in the course of the charge there was no presump-

---

[6]Rice v. New York L. Ins. Co. 207 Minn. 268, 290 N. W. 798; Blindman v. Industrial Loan & Thrift Corp. 194 Minn. 462, 260 N. W. 867; Drown v. Minneapolis St. Ry. Co. 202 Minn. 66, 277 N. W. 423; Fonda v. St. Paul City Ry. Co. *supra;* M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N. W. 801; see, 2 Wigmore, Evidence (3 ed.) §§ 285, 287.

tion against an employer if an employee is no longer in their employ."

He then stated:

"* * * If they are in the employ of the company there is a presumption if they are not brought in that their testimony would be adverse. If they are no longer in the employ, each side has a right to bring in his employee."

Under our new rules, the court then stated:

"* * * it is very easy to ascertain if any defendant or plaintiff wishes, to ascertain the names of the people, ascertain the addresses if they are known. Each side has a right to bring them in."

The question of one of the jurors as to "why they didn't get the porter that was on the train" as one of the witnesses presented the court with the opportunity to fully state the applicable presumption regarding witnesses in the employ of defendants. Stating the rule then, as the court did, with the attendant circumstances, may well have been more favorable from the plaintiff's standpoint than if it had been included more fully, originally, in the general charge. If its omission from the general charge was prejudicial to the plaintiff, under all the circumstances presented by the record, such prejudice was removed by including it as a part of the additional instructions. A failure to so charge in Knott v. Hawley, 163 Minn. 239, 203 N. W. 785, was not held to be error which would result in a new trial. The inference which the circumstances give rise to finds justification in the unexplained failure of a party to produce a witness who may have or has superior knowledge of the facts in issue, who is apparently within the power of the party to produce, and who would more naturally favor that party. In other words, the basis for the inference is found in circumstances which make it appear natural for the party to produce the witness, and if not produced, the failure to produce the witness may indicate fear that his testimony would be adverse. Where it is permissible to draw such inference, the court may instruct the jury that it is at liberty to infer from a party's failure to call the witness that, if the witness's testimony were given,

it would be unfavorable to that party. But, it is not necessarily error to refuse to give such instruction, for the court is generally not required to instruct the jury as to what inferences may be drawn from a set of facts. It is largely discretionary with the trial court depending upon the circumstances and the feature of the evidence produced. See, Knott v. Hawley, *supra;* Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 212 N. W. 533.

Under our decisions failure to call a natural witness may be proper subject of comment by the adverse party, and this is so even though the court may have refused to instruct the jury as to the inference. It was held in Drown v. Minneapolis St. Ry. Co. *supra,* that, even if the comment is unjustified, the error will not warrant a new trial unless a party can show that he was prejudiced thereby. The inference to be drawn, if the evidence warrants such inference, under our decisions, may be brought to the attention of the jury by comment of the adverse party or by the court instructing the jury as to the inference, if, in the court's discretion, this is justified. But if it is brought to the attention of the jury either by the comment of the adverse party or by the court in its instructions, it would not necessarily follow that failing to have the benefit of both, would be error, prejudicial, to the extent of warranting a new trial.

■ Neither was it prejudicial error on the part of the court to fail to notify counsel to be present when giving additional instructions in a civil case;[7] nor to fail to reiterate the charge on burden of proof. This had been fully covered and the jury made no request to hear it again.

■ Plaintiff criticizes that part of the court's charge wherein he sought to explain the comparative negligence rule and wherein he indicated that he would explain it to the jury due to the fact that some of the jurors may have served on the jury in federal employers liability cases where that rule applies. The court had previously in the charge fully instructed the jury on the law of negligence, contributory negligence, and assumption of risk. In part, in explaining the comparative negligence rule the court stated:

[7]See, 6 Dunnell, Dig. & Supp. § 9790.

"* * * If you find that plaintiff was guilty of contributory negligence to any degree which contributed proximately to the happening of this accident then plaintiff cannot recover even though her negligence was of a considerably lesser degree than whatever you might find defendants are guilty of."

The trial court otherwise in its charge stated that contributory negligence is no different than ordinary negligence—that it is exactly the same thing—; and at no other time did he use the term "negligence to any degree." No harm could have resulted therefrom. The court made it clear that comparative negligence as a rule of law did not prevail in the instant case.

In Roach v. Roth, 156 Minn. 107, 194 N. W. 322, an instruction was given in response to jurors' question as to whether the rule of comparative negligence applied, and this court held the instruction given under the circumstances did not constitute reversible error. In Garey v. Michelsen, 227 Minn. 468, 35 N. W. (2d) 750, the moving party objected to the instruction of the trial court on the ground that it had failed to instruct the jury that to bar recovery the contributory negligence must have been the proximate cause of the accident and on appeal assigned error as to the court's statement in its charge on the issue of plaintiff's negligence in the following form (227 Minn. 473, 35 N. W. [2d] 754):

"if you find that the plaintiff was negligent in any degree whatsoever, then you need go no further. That ends the case, and your verdict would be for the defendant."

It was held by this court that whatever error might have been present in the portion of the charge complained of was cured by other general portions of the charge, which, subsequently correctly defined in detail negligence and proximate cause and their proper relationship in determining liability.

We have held, and we adhere to the rule, that "want of ordinary care" is the test of contributory negligence, as of negligence; further, that there are two necessary elements to contributory negligence, the first being "want of ordinary care" and the second, "a causal connection between plaintiff's conduct and the accident"; and,

finally, that the plaintiff's negligence if established is sufficient to bar recovery if it proximately contributes directly to the result.

The standard of care required by law to be exercised to excuse one from a charge of contributory negligence is generally the same as that required to excuse one from a charge of negligence—ordinary prudence. An approved statement under our decisions is that plaintiff's negligence, to prevent a recovery, must contribute proximately to the injury as a cause, but it need not be itself the sole proximate cause of it. Erd v. City of St. Paul, 22 Minn. 443; Roach v. Roth, *supra;* Gordon v. Pappas, 227 Minn. 95, 34 N. W. (2d) 293; 13 Dunnell, Dig. (3 ed.) §§ 7012, 7015, and cases cited. Also, see recent case of Brewer v. Johnson, 247 Iowa 483, 72 N. W. (2d) 556, with reference to the use of the term "any degree" in defining contributory negligence.

Contributory negligence is to be distinguished from assumption of risk in the particular that in order that a defendant may avail himself of the doctrine of assumption of risk it must appear that the plaintiff had knowledge of the risk and that, having opportunity either to incur it or avoid it, he voluntarily chose to incur it. Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649. This court in distinguishing between assumption of risk and contributory negligence held that "Assumption of risk is to be distinguished from contributory negligence in all cases save where an assumption of risk is so unreasonable that it also constitutes contributory negligence." Schrader v. Kriesel, 232 Minn. 238, 239, 45 N. W. (2d) 395, 396. The fact question encountered in the instant case in connection with defendants' defense of assumption of risk is whether or not plaintiff's injury came proximately from an exposed position voluntarily assumed. Westerberg v. Motor Truck Service Co. 158 Minn. 202, 197 N. W. 98. If the evidence produced by the plaintiff, however, tends to provide proof that the plaintiff was guilty of contributory negligence, or that plaintiff assumed the risk, the defendants would be entitled to receive the benefit of such proof.[8]

[8]See, Price v. King, 161 Neb. 123, 72 N. W. (2d) 603.

We are unable to predicate error, with prejudice, upon the court's charge in any of the foregoing respects. The questions of negligence, contributory negligence, and assumption of risk were clearly and correctly submitted, the jury being clearly charged that the burden was on the plaintiff to prove negligence on the part of the defendants, and that the burden of proof was on the defendants and each of them to prove contributory negligence or assumption of risk on the part of the plaintiff. Instructions to this effect cannot ordinarily, unless prejudicial in some other respect, afford any basis for error. Instructions given to the jury must be construed together, and are sufficient if when construed as a whole they properly state the law. 14 Dunnell, Dig. (3 ed.) § 7165.

Plaintiff requested that the court charge specifically that the alleged assurances of the porter in arranging the luggage in the rack would in effect constitute negligence on the part of the Pullman Company as a matter of law. This instruction, if given as requested, would have been faulty in assuming to grant to the plaintiff an unrestricted right to rely upon the assurances of safety of the porter. Such assurances if stated would simply constitute a factor for consideration by the jury together with other evidence bearing upon contributory negligence or assumption of risk, if any, on the part of the plaintiff. Under the evidence certainly such an absolute right could not exist beyond the point that observations indicate to the contrary.[9]

Plaintiff complains that the trial court placed undue emphasis on the terms contributory negligence and assumption of risk; that they were repeated more than once; and that this was prejudicial. It must be taken into account that the plaintiff here chose to bring this action against three defendants. This made it more difficult to advise the jury of the applicable law and necessitated repetition in defining the issues with respect to the plaintiff, each defendant, and all defendants. A reading of the charge would indicate that the repetition of the terms in the field of negligence kept pace one with the

[9]Mahowald v. Beckrich, 212 Minn. 78, 2 N. W. (2d) 569; O'Neill v. Minneapolis St. Ry. Co. 213 Minn. 514, 7 N. W. (2d) 665.

other and that the court attempted to regard the terms equally. The fact that they were restated was necessitated by the multiple problems of the case and the manner in which these problems differed as to plaintiff's claim against the several defendants.

 Plaintiff contends that the court erred in permitting counsel to ask questions for impeachment purposes without the intention of proving, or proof of, the alleged impeachment. An examination of the testimony of plaintiff and her daughter both on direct and cross-examination reveals conflicts, contradictions, and wavering between the testimony given in earlier depositions and in earlier oral statements and that given at the trial. The testimony is replete with subsequent admissions over earlier denials coupled with evasiveness and plain uncertainty. This situation may well have been a determining fact in the decision of the defendant Northern Pacific that the record as it stood just before the plaintiff rested did not justify its bringing further witnesses from distant points or calling in additional witnesses not already present. Had the plaintiff and her witness in the depositions and in the direct testimony at the trial made their denials categorically, without wavering and without the admissions and uncertainties exhibited, no doubt other and separate impeaching testimony from that produced upon cross-examination would have been required if available. If the witness admits unequivocally as to inconsistent statements being made, he has thereby impeached himself.[10] Here, most of the impeaching questions on cross-examination were either admitted or partially admitted and others answered evasively. In such a situation the adverse party might well elect to let the jury draw its own inferences and conclusions without taking the time or going to the expense of producing other impeaching testimony. This court in discussing when a witness may be impeached said in Erickson v. Erickson & Co. 212 Minn. 119, 125, 2 N. W. (2d) 824, 827:

"A witness may be impeached by contradicting his testimony. Failure to assert a fact when it would have been natural to assert it permits an inference of its nonexistence. The nonexistence of a

[10]See, Price v. Grieger, 244 Minn. 466, 472, 70 N. W. (2d) 421, 425.

fact established by the inference arising from such an omission to assert may be used to contradict an assertion of its existence. A witness may be impeached by a prior statement, either written or oral, purporting to narrate all the facts with respect to a particular event, which omitted to refer to a vital or important fact to which he testified."

On cross-examination of plaintiff questions were asked her as to the fact of having made previous claims for injuries. Plaintiff contends that to permit this was error. After considering the record as a whole, we do not agree with this contention. Ordinarily, it is proper on cross-examination to question a claimant in a personal injury case as to the facts of having made previous claims for injuries. McGuire v. Village of Caledonia, 140 Minn. 151, 154, 167 N. W. 425, 426.

The latitude permitted in cross-examination is one resting largely within the discretion of the trial court, and it will not be reversed on appeal except for a clear abuse of discretion. State v. Minneapolis Cold Storage Co. 150 Minn. 208, 212, 184 N. W. 854, 856. It may, dependent upon the issues involved and the situation and the circumstances presented, be error to refuse to allow such cross-examination as may have a reasonable tendency to throw light on a situation or a transaction, and this even though the inquiry is as to matters not touched upon in the direct examination. This rule is one which applies with greatest force to the immediate parties to transactions or situations involved in litigation and has special application where the testimony is indefinite and evasive, or where alleged fraudulent transactions are involved. Cohen v. Goldberg, 65 Minn. 473, 474, 67 N. W. 1149, 1150; Nicolay v. Mallery, 62 Minn. 119, 121, 64 N. W. 108, 109; Zeglin v. Tetzlaff, 146 Minn. 397, 178 N. W. 954; National German-American Bank v. Lawrence, 77 Minn. 282, 79 N. W. 1016, 80 N. W. 363.

If there is found to be any variance between prior testimony, prior oral statements, or prior statements in writing if such be admissible and the testimony given upon the trial, then properly its effect upon the credibility of the witness should be left to the jury. A prior con-

tradictory statement is always admissible to impeach a witness. The theory of such impeachment is founded on the premise that the witness's prior version shows that he spoke erroneously either when he gave the prior testimony or made the prior assertions or when he testified at the trial. If so inconsistent that they are contradictory in fact, both cannot be correct. The inconsistency which furnishes contradiction and a conflict between the two constitutes the basis for impeachment. If there is no inconsistency between the prior depositions and the prior oral statements of plaintiff's witnesses and the testimony given at the trial, there is no basis for impeachment. And whether their testimony was in fact inconsistent with prior testimony or prior oral statements must be determined from the testimony as a whole and not from a single or isolated answer.

Plaintiff and her witness admittedly were cross-examined on the questions asked and the answers given to their prior depositions. They admitted making certain oral statements at Seattle. The interrogation thereupon was within proper limits. The manner of the interrogation was before the court and the jury. Upon examination it cannot be said that answers in the one did not vary from the other. There were no such categorical denials as made it legally incumbent upon the defendants to produce other and separate impeaching testimony. Impeachment of witnesses by prior statements made or prior testimony given concerns their credibility and the weight to be given to their testimony and as such is a matter solely for the jury to pass upon with freedom to accept or reject the witness's testimony as the trier of fact. Blumberg v. Palm, 238 Minn. 249, 56 N. W. (2d) 412. Also see, O'Neill v. Minneapolis St. Ry. Co. 213 Minn. 514, 7 N. W. (2d) 665; 6 Dunnell, Dig. & Supp. § 10351; Tinklepaugh v. Rounds, 24 Minn. 298.

While a written statement taken at Seattle shortly after their arrival on July 19, 1949, appeared to be inadmissible for the reason that she did not receive a copy as the injured party under our statutory requirements, nevertheless, the court soon detected its inadmissibility upon objection being made and ordered any statements

regarding it or its contents stricken, and the jury was admonished not to consider it. No harmful prejudice in fact can be predicated thereon.[11]

Neither are we impressed with the contention of the plaintiff that the court erred in sustaining objection to plaintiff's exhibits described in the record as K-1 through K-10 constituting employer's records of the plaintiff's employment record at the Western Electric Company in Chicago. These records contained hearsay, self-serving reports and declarations, together with immaterial matter. No one had taken the time to separate them. It was brought to the attention of counsel that this might have been necessary so that the admissible could be segregated from the inadmissible. Upon the state of the offer as made, we cannot say that the court committed prejudicial error. No objection as to foundation was made as regards admissibility under M. S. A. 600.01, 600.02.

Since this is a negligence case it is clear that, where different minds may draw different conclusions from the evidence or the evidence is conflicting in regard to the negligence of the defendants, the contributory negligence of the plaintiff, and the assumption of risk on the part of the plaintiff, these questions should all be submitted to the jury for determination. We think the evidence is such here.

We are of the opinion, after carefully examining the charge and construing it as a whole, that it fairly and properly stated the applicable law as between the parties and that, taken together with the additional instructions given when requested by the jury, it is on the whole complete and free from prejudicial error. We have in the instant case a situation of conflicting stories being presented to a jury with the jury finding that the defendants' version ought to prevail. The jury being the trier of fact and supreme in that regard, within certain well-defined limits, its verdict should be sustained unless prejudicial error be found substantially affecting plaintiff's rights. Ordinarily, if different persons might reasonably draw different conclusions from the evidence, the verdict should not be dis-

---

[11]See, M. S. A. 602.01.

turbed and every doubt should be resolved in its favor. In that respect, the discretion exercised by the court below, in ruling thereon, is important, and a prerogative which this court will not override unless there has been a clear abuse of discretion or a new trial or other disposition is found to be justified upon other grounds to avoid manifest injustice. 14 Dunnell, Dig. (3 ed.) § 7142.

It must be expected that some difficulty will be encountered in any jury trial where opposing parties present conflicts in the evidence with the attendant procedure and all its opportunities for error. None when finished will come out precisely and technically correct in every detail free from the slightest error. The parties were entitled to a fair trial, and we find nothing in the record to indicate that the parties here, upon the disputed, and the undisputed facts, and the conflicts and the contradictions in the evidence did not have a fair consideration of their claims by the jury.

Conceding that there are cases where prejudicial error so affects substantial rights that a new trial ought to be granted, this is not one. Other errors assigned have been examined; we do not find them such as to require a new trial. Nothing will be gained by further discussion of assignments of error. The order of the trial court is affirmed.

Affirmed.