BUFORD CLARK v. CHICAGO & NORTH WESTERN RAILWAY COMPANY.[1]

June 18, 1948.

No. 34,623.

[1]Reported in 33 N. W. (2d) 484.

*Alfred E. Rietz, George H. Henke,* and *Lowell Hastings,* for appellant.

*Eugene A. Rerat,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court entered upon a verdict for plaintiff. The action arises under the federal employers' liability act. 45 USCA, §§ 51 to 60, inclusive. Defendant's motions for a directed verdict at the close of all the evidence and for judgment notwithstanding the verdict were both denied by the trial court. These denials were assigned as error, together with the court's refusal to give certain instructions. We have examined the requested instructions, and we consider that they pertain substantially to the assignments of error raised with reference to the refusal of the court to direct a verdict. No new trial was requested.

The only issue involved on this appeal is whether plaintiff has adduced sufficient evidence to sustain the verdict of the jury. On appeal from a judgment, where there has been no motion for a new trial but where there was a motion by appellant for a directed verdict, the only question presented is whether there is evidence to support the judgment. Where the only assignments of error were based

on the refusal to direct a verdict and to grant judgment notwithstanding verdict, the only question reviewable is whether the evidence reasonably sustains the verdict. 1 Dunnell, Supp. § 388. This court has repeatedly held that on an appeal involving the sufficiency of the evidence to justify a verdict it is not necessary for this court to review and discuss the evidence to demonstrate the correctness of the verdict; that it is not the province of an appellate court to demonstrate the correctness of a fact issue found by the trial court. Magnuson v. Burgess, 124 Minn. 374, 145 N. W. 32; Holmes v. Conter, 212 Minn. 394, 4 N. W. (2d) 106; Haglin v. Ashley, 212 Minn. 445, 4 N. W. (2d) 109; Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450. We therefore give here a limited review of the fact situation.

It is undisputed that plaintiff was injured in the course of his employment as a brakeman for defendant. The complaint alleged that defendant, in violation of the federal employers' liability act, failed to provide and maintain for plaintiff a reasonably safe place to work, in the following respects:

"* * * that defendant's said Capitol Drive Yard, at said time, was, due to the negligence of the defendant, in a hazardous and unsafe condition; that the defendant negligently failed to provide adequate lights for said yard; that defendant negligently failed to make a timely and adequate inspection of said yard, and negligently failed to give the plaintiff timely and adequate notice and warning of the dangerous and hazardous condition of said yard, and of the presence of the foreign object in said yard at said time; that the defendant negligently, and in violation of law, permitted the space between its tracks and in and around its tracks, switches and yards, ordinarily used by its employees in the discharge of their duties, to become and remain obstructed by foreign objects which interfered in the work of defendant's employees, including the plaintiff, and subjected defendant's employees and the plaintiff to unnecessary peril and hazard."

The trial court withdrew from the consideration of the jury all claims of negligence except that which alleged in substance that

plaintiff tripped over a piece of board or block which defendant negligently permitted to remain in the yard and which defendant knew or should have known was there. In instructing the jury as to what facts would have to be found in order to hold defendant liable, the court said in part:

"Now the Court charges you that if you find that the plaintiff stepped upon a loose board or object in the yard and as a result thereof was injured, those facts standing alone are not sufficient to entitle plaintiff to a verdict. He must further prove that the defendant knew that such board was lying in the yard, or that the same was there for a sufficient length of time so that the defendant, by the exercise of ordinary care, should have ascertained its presence and then removed it or warned plaintiff that it was there. Defendant denies that there was any board there at all. That is its claim. Plaintiff claims there was."

No exceptions were taken to the above instruction by either party, so it became the law of the case. Defendant now raises no question as to the extent of the damages. The only question here for review, therefore, is whether the evidence is sufficient to warrant the verdict for plaintiff under the instructions given by the trial court.

The testimony as to whether plaintiff tripped over the block, as alleged, is completely contradictory. The evidence establishes without dispute that on January 16, 1946, plaintiff, an employe of defendant, was working as a member of a five-man switching crew in the Capitol Drive Yard in Milwaukee, Wisconsin. He had worked for defendant about eight days, but it was the first time he had worked with this particular crew and in this particular yard. As plaintiff was walking toward a railroad switch which he had been directed to throw, along the customary path used by switchmen to approach that switch, he fell and injured his left knee and leg. He had reported for work at about eight o'clock the night of the accident, which occurred about 10:30 p. m. The night was dark and clear. There was no artificial light at the place of the accident other than that provided by the lantern plaintiff carried. Plaintiff testified

that he tripped or fell on "a piece of plank about four inches high and about 10 or 12 inches long," left in the path as he approached the switch, and he claimed that the presence of this block was the cause of his fall and the resulting injury.

Two other members of the switching crew, George E. Wahl, conductor, and Arthur H. Gerbitz, a brakeman, went to his assistance. Both were long-time railroad men and had been in the employ of defendant for many years. They both testified that they looked about the premises at the scene of the accident while plaintiff was still there and that there was no board or block there that they could find or see. These two crew members also testified that plaintiff did not inform them that he had tripped over a board. Plaintiff claimed that he did tell them about the block, and when asked if he showed it to them testified that "It was right there in plain view. They could see for themselves." The evidence shows that blocks of wood, generally about two inches thick and 12 inches long, were customarily used by the employes in that yard for blocking car wheels, although the blocks were not furnished by the company. The evidence is not clear as to whether blocks were customarily used at the particular place where the injury occurred. Conductor Wahl said that the blocks were used on the team track and other various tracks. Brakeman Gerbitz testified that there was no need for these blocks in the vicinity of that switch, because cars were not stopped and blocked in that vicinity, for if they were they would foul the switch point. He said, however, that, as far as he remembered, it had been the practice during the 20 years he had been with the company to use the blocks where a car was to remain a short time, and he testified that "along most any tracks where you work you will find them [the blocks] along the tracks." Both of these witnesses testified that the yard sloped toward the north.

A statement signed by plaintiff while confined in the hospital was introduced in evidence in which he said: "I don't know what the object was I stepped on." He claims that this language was the claim agent's version, although the line referred to was written in longhand by plaintiff. He said that he told the claim agent, "I stepped

on a foreign object, yes; I did at that time, that's what I called it."

The gist of defendant's argument for reversal is in the contention that the alleged presence in the pathway of the block over which plaintiff claims to have tripped depends upon the uncorroborated testimony of plaintiff and is contradicted by two of defendant's witnesses. It further contends that, even assuming that there was enough evidence for the jury to find that there was such a board in the pathway, that fact alone was not sufficient to charge defendant with negligence even in conjunction with the fact that similar boards were placed alongside the tracks in the yard for the use of its employes. Defendant further argues that there is nothing in the record as to how long the board had been in the pathway, and it contends that there is no evidence to permit the jury to find that defendant, in the exercise of ordinary care, should have ascertained the presence of the board and taken steps to remove it or warn plaintiff of its presence. Lacking such evidence, it insists that the case should never have been submitted to the jury. It also contends that because of the statement plaintiff signed as submitted by the claim agent his testimony at the trial is not entitled to credence.

Plaintiff claims that there was reasonable evidence to submit to the jury and that the fact questions involved were determined by the jury in his favor. He argues that the credibility of the witnesses was for the jury, and that the jury was entitled to disbelieve and disregard the testimony of defendant's witnesses and could take into account that they were employes of defendant. Plaintiff points out that defendant's own witnesses testified that it was the custom to use the wooden blocks in the Capitol Drive Yard and that the blocks could be found "along most any tracks." From this, plaintiff reasons, the jury had ample evidence to find that defendant knew or should have known of the presence of the block over which plaintiff tripped.

Under established decisions of this court, verdicts based upon speculation or conjecture must be set aside. Here, however, if plaintiff's statement of the facts is accepted, as we must assume was done by the jury, the verdict does not rest upon speculation or conjecture.

Where the evidence is thus flatly contradictory, whether the case made by the evidence of a party is one of fabrication or whether his version thereof is so inherently improbable as to be unworthy of belief is primarily for the jury and the trial court to determine. Only in exceptional cases will this court so declare, and then only when the question is free from doubt. Nenno v. DeCoster, 161 Minn. 492, 201 N. W. 937; Johnson v. Finch, Van Slyck & McConville, 115 Minn. 252, 132 N. W. 276. Great deference is paid to any expression of approval or disapproval of the verdict by the trial judge. 5 Dunnell, Dig. & Supp. § 7154.

The trial court, in denying defendant's motion for judgment notwithstanding the verdict, said in part in its memorandum:

"* * * Plaintiff testified that he stepped on a board, sometimes referred to as a jack-block, about four inches thick and twelve inches long that had been carelessly and negligently left in the path of his travel to reach the switch, and that the presence of this jack-block was the cause of his fall and the resultant injury. The other members of the switching crew saw him fall and went immediately to his assistance, and helped him. They claim that there was no board or jack-block there that they could find or see. The evidence shows, practically without dispute, that such blocks of wood were customarily used in that yard by the employes for blocking car wheels. The jury necessarily determined from the conflicting evidence that such a board or jack-block had been left there carelessly and negligently by employes of the defendant company, and that that carelessness and negligence was the proximate cause of plaintiff's fall and resultant injury. There is no evidence tending to show that others used similar boards or jack-blocks in that yard or that strangers might have dropped it where it was or that it had been brought there by action of the elements. The question then is whether the jury was justified in drawing the inference that the jack-block had been left in that place by the carelessness and negligence on the part of the defendant's employes. It would seem that such would be a reasonable inference to be drawn from all the testimony by the jury."

In State v. Drescher, 219 Minn. 146, 17 N. W. (2d) 160, a filiation proceeding, a divided court, two justices dissenting, granted a new trial where the verdict of guilty rested on the sole evidence of a witness whose testimony was held to be improbable, contradictory, and inconsistent, on the ground that the testimony was manifestly and palpably contrary to the great weight of the evidence. It is to be noted, however, that in that case the court stressed the contradictory and improbable nature of the witness's testimony, and also that the witness's mother and sisters entertained hard feelings toward defendant as the result of another matter. We do not feel that the instant case comes within the rule of the Drescher case.

This court has held that the fact alone that the testimony of plaintiff is opposed by that of several other witnesses is not enough to warrant the trial court in setting aside a verdict based upon the former. Gustafson v. Trocke Cafeteria Co. 174 Minn. 320, 219 N. W. 159. We see no reason why the same rule should not apply to reversals by this court on appeal.

On the issue of credibility of the witnesses, the court instructed in the following terms:

"Now you are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. In considering the credibility of the witnesses and the weight to be given to their testimony, you should take into consideration the conduct and demeanor of the witnesses upon the witness stand while giving their testimony; their candor and frankness, or lack thereof while testifying; the reasonableness or the unreasonableness of the testimony given by the witnesses; the probability or the improbability of the truth of the testimony given by the witnesses; the opportunity or the lack of opportunity on the part of the witnesses, or any of them, of knowing and observing the facts concerning which they are testifying; the interest or the lack of interest that any witness may have in the result of this litigation; the relationship, if any, that any witness bears to the party litigants, or either of them. You may use such other tests as in your experience in life you have found helpful in deter-

mining the truth of the testimony of witnesses. If you find and believe that any witness has knowingly and intentionally testified falsely to any material fact at issue in this case, then you are at liberty to disregard the entire testimony of such a witness, excepting insofar as you find it corroborated by other credible testimony or evidence in the case."

Defendant took no exception to this portion of the charge. The court further instructed the jury that it was plaintiff's burden "to establish his claim of negligence that he makes against the defendant, and the nature and the extent of his damage and loss resulting therefrom by a fair preponderance of the evidence." We are satisfied that there was sufficient evidence, if believed, to support the verdict. As the issue of credibility was for the jury, we must assume that the jury accepted plaintiff's version of the facts in rendering judgment for him.

The view that where the case turns upon controverted facts and the credibility of witnesses it is peculiarly a case for the jury is also established by decisions of the United States Supreme Court. In Tiller v. Atlantic Coast Line R. Co. 318 U. S. 54, 68, 63 S. Ct. 444, 451, 87 L. ed. 610, 618, 143 A. L. R. 967, the court said:

"* * * 'Where the facts are in dispute, and the evidence in relation to them is that from which fair-minded men may draw different inferences,' the case should go to the jury."

In Ellis v. Union Pacific R. Co. 329 U. S. 649, 653, 67 S. Ct. 598, 600, 91 L. ed. 572, 576, the court said:

"The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury. [Citing cases.] Once there is a reasonable basis in the record for concluding that there was negligence which caused the injury, it is irrelevant that fair-minded men might reach a different conclusion. For then it would be an invasion of the jury's function for an appellate court to draw contrary inferences or to conclude that a different conclusion would be more reasonable. * * * And where, as here, the case turns on controverted facts and

the credibility of witnesses, the case is peculiarly one for the jury. Washington & Georgetown R. Co. v. McDade, 135 U. S. 554, 572, 10 S. Ct. 1044, 1049, 34 L. ed. 235; Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 68, 63 S. Ct. 444, 451, 87 L. ed. 610, 143 A. L. R. 967."

The Minnesota rule is well expressed in Johnson v. Evanski, 221 Minn. 323, 327, 22 N. W. (2d) 213, 215:

"Taking, as we must, the view of the evidence most favorable to the verdict, a motion for a judgment notwithstanding, whether based on negligence or on contributory negligence, should be denied unless the evidence in support of the verdict, and all reasonable inferences to be drawn therefrom, be so wholly incredible and unworthy of belief or so conclusively overcome by other uncontradicted evidence that the want of negligence or the presence of contributory negligence is so clear as to leave no room for an honest difference of opinion among reasonable men."

Defendant cites Waller v. N. P. Terminal Co. 178 Or. 274, 166 P. (2d) 488, and states that the facts in that case are similar to the facts in the instant case, in that Waller, a switch foreman, claimed that as he attempted to board a moving freight train he slipped upon a stick lying near the track, fell, and was injured. It claims that the court there held that it was incumbent upon plaintiff to show two things: First, that defendant or its servants placed the stick in its dangerous location or knew of its presence, and, second, that it had been there for a sufficient length of time to charge defendant with notice of its presence. We quote from the rule laid down in that case as follows (178 Or. 302, 166 P. [2d] 498):

"The rule is firmly established that where plaintiff slips upon an object upon the premises of the defendant, plaintiff must, in order to establish liability, show that the defendant or his agent put the dangerous object there, or that they knew or by the exercise of reasonable diligence could have known that it was there and failed to exercise diligence to remove it."

An examination of the facts in the Waller case reveals what appears to us to be a fact situation considerably different from that in the case at bar. There, according to the complaint, the defendant owned and operated a railroad yard, with tracks for switching purposes, in connection with other adjacent and larger yards. On tracks in this yard, loaded and empty cars were spotted by employes of defendant. The loading and unloading was done by employes of the various railroads and forwarding companies, and none was done by employes of defendant, the only function of defendant being to conduct switching operations in the various yards. Plaintiff, foreman of a switching crew, was injured during the darkness of night when he claimed that he slipped on a stick or debris while running alongside a string of cars in attempting to board one. He claimed that defendant maintained the footpath and ground area along the tracks where he was working in a slick, slippery, and muddy condition and permitted debris and wooden sticks to be strung along the ground. Under the facts in that case, the court disregarded any allegation as to the slippery and muddy condition and considered only the allegations that defendant negligently caused and permitted certain debris and wooden sticks to be strung along and upon the ground area which plaintiff was required to use in boarding cars. The evidence showed that the debris resulted from loading and unloading operations by others than defendant's employes. The court said (178 Or. 298, 303, 166 P. [2d] 497, 499):

"* * * There is not a scintilla of evidence that the defendant terminal company ever placed or caused to fall into the yard any sticks or debris. * * *

*     *     *     *     *

"* * * It may be conceded that if the evidence had disclosed that debris was strewn generally about the area where the accident occurred and if the defendant had negligently allowed it to remain there with notice of its existence, then the defendant's knowledge of the general condition prevailing would have been sufficient to support a verdict for the plaintiff even though the defendant did not

know of the particular stick on which the plaintiff slipped. But that was not the case here."

Plaintiff's own evidence in that case established that the debris which was dropped in the yard did not continue therein, as the undisputed facts were that the yard was inspected and cleaned daily, and that it was cleaned the day before, the day of, and the day after the accident. The court there said that, since there was no evidence that defendant caused any dangerous condition in any part of the yard, it could be held liable, if at all, only on the theory that it negligently failed to remove any object or objects deposited there by others. Under the circumstances in that case, the court said that it was incumbent upon plaintiff to show that the specific condition alleged to have caused plaintiff's fall had existed for a sufficient period of time to charge defendant with constructive notice of it, or else to show that the general system of inspection through the yards and under all the circumstances was insufficient and that additional inspection, if reasonably required, would have probably discovered the object. Plaintiff failed to do this. The court concluded that there was no substantial evidence of negligence on the part of defendant. Another condition appeared in the Waller case entirely different from that in the case at bar. The court there said that there was ample and persuasive evidence from which the jury could have found that plaintiff on the night in question violated the rules of the company with reference to intoxicating liquor, and concluded that the jury (178 Or. 304, 166 P. [2d] 499) "could reasonably have found that the plaintiff's injury resulted solely from his own conduct while under the influence of intoxicants."

Defendant in its oral argument in the instant case cited Fandel v. Parish of St. John the Evangelist, 225 Minn. 77, 29 N. W. (2d) 817. We consider the facts in that case entirely different from those in the case at bar, in that there the plaintiff, after dark, fell into a coalhole opening on a public sidewalk adjacent to defendant's property where the cover to the coalhole had been removed by unknown parties. There was nothing in that case to show that defendant had

anything to do with the removal of the cover, and the record showed that defendant there had not used the opening for receiving coal for a period of more than five months previous to the accident.

In the instant case, it is undisputed that defendant had control and operation of the yards. There was evidence, practically without dispute, that it was the custom and practice of defendant's employes for many years to use boards or blocks similar to the one over which plaintiff claims to have tripped in connection with their duties in blocking cars. There was evidence from which the jury could infer that the board or block over which plaintiff claimed to have fallen was one used by defendant's employes with the knowledge of defendant. Under the circumstances, the jury could have determined from the conflicting evidence that such a board could have been thrown or left in the path, where plaintiff claims it was, by the carelessness or negligence of defendant's employes, and that such carelessness and negligence were the proximate cause of plaintiff's fall and injuries. There was no evidence, as in the Waller case, that employes of other companies using the yards, or strangers, might have been responsible for bringing the debris or sticks into the yard. Here, the testimony was that the boards or blocks were used by defendant's employes, with the knowledge of defendant, in connection with their work.

While it is almost beyond comprehension that three witnesses could differ so completely as to the presence of a board or block claimed to be about four inches high and 10 or 12 inches long, one claiming that it was at the scene of the accident in plain sight, and two claiming that they saw none, it was still a question for the jury—not this court—to determine which witnesses were correct in their observations. The jury heard the evidence, had an opportunity to observe the witnesses, to hear the court's charge, and to weigh the evidence. They returned a verdict for plaintiff. Under the testimony, where it was shown that it was the long-established custom and practice in defendant's yards to use such blocks, defendant must be charged with constructive knowledge of the presence of the board or block in the pathway where the circumstances were such that the

jury could have found that the block or board was in the pathway because of the carelessness or negligence of defendant's employes and that defendant failed or neglected to have it removed.

Affirmed.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.

