FIRST TRUST COMPANY OF ST. PAUL AND ANOTHER, EXECUTORS OF ESTATE OF JOHN DONALD McLEAN, v. N. P. McLEAN.

93 N. W. (2d) 517.

December 12, 1958—No. 37,540.

*Frank J. Hammond* and *Briggs, Gilbert, Morton, Kyle & Macartney,* for appellants.

*William R. Busch, Jerome B. Simon,* and *Bundlie, Kelley & Maun,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying plaintiffs' motion for a new trial.

Plaintiffs, as executors of the estate of John Donald McLean, brought this action to recover $13,900 allegedly owed to decedent at his death by defendant. On December 18, 1951, decedent gave defendant, his brother, an option to purchase all the stock of the Town House, a St. Paul restaurant and bar. At that time decedent owned all the stock of the Town House. Defendant paid decedent $500 by check as consideration for this option, which $500 was to be applied on the purchase price of $20,000 if and when the option was exercised. On April 8, 1952, defendant exercised this option and began making monthly payments of $400 in accordance with the terms of the 1951 option agreement. Decedent delivered the stock certificates to defendant, and defendant gave decedent a promissory note for $19,500. Defendant made the monthly payments of $400 until June 1953. A total of $6,100 had then been paid, leaving a balance of $13,900. Plaintiffs claim that this $13,900 has never been paid.

Defendant's defense was that his wife had paid decedent about 2 weeks prior to his death on June 28, 1956. Mrs. Veronica M. McLean, defendant's wife, testified that she had arranged a meeting with decedent; that thereafter she met decedent in the parking lot of the Lexington, a St. Paul restaurant and bar (of which she owns all the stock and wherein she has an office); and that she gave decedent a paper bag containing $13,000 in $10 and $20 bills as payment for the debt owed decedent by her husband, the defendant. Mrs. McLean testified that the balance of $900 was to be satisfied by her arranging for the cancellation of an indebtedness of $900 which decedent allegedly owed the Town House. She also testified that at that meeting decedent surrendered the alleged promissory note for $19,500 to her but that she destroyed it because she thought it had no further use.

Donald M. Ryan, general manager of the Lexington, partially

corroborated Mrs. McLean's story by testifying that he had gotten the paper bag for Mrs. McLean and that he had seen her place several $500 bundles of currency into the bag. He did not, however, see the actual payment made to decedent.

William J. McLean, a brother of both decedent and defendant and an employee of the Town House, testified that he had mailed a monthly statement of account on behalf of the Town House to decedent on June 1, 1956, which showed approximately $900 owing and that shortly before his death decedent had telephoned him at the Town House and told him not to send any more statements because "he had made a settlement in full, and cleaned the account."

Plaintiffs, on the other hand, supported their claim that payment had not been made by showing (1) that decedent, for several months before his death, had made no sizable deposits in any of the banks where he kept savings and checking accounts or a safety deposit box and that other banks contacted by decedent's executors reported no deposits by decedent; (2) that no money was found on decedent's person or in the hotel room where he lived; (3) that Gustave J. Kvaase, an accountant, was visited by decedent at his Minneapolis office just two days before decedent's death and that decedent had told him that his brother (defendant) had not paid him the money on the Town House agreement and had inquired of Kvaase what steps he could take to collect this money; (4) that although defendant kept elaborate books of account no record of this $13,000 payment had been made until approximately six months after decedent's death; (5) that defendant had no documentary proof of payment in that no receipt for the $13,000 payment was ever given by decedent and the promissory note allegedly surrendered by decedent to Mrs. McLean upon payment was immediately destroyed by her; and (6) that the indebtedness of $900 owed by decedent to the Town House, which allegedly had been satisfied in the payment transaction, had never been cancelled on the Town House records.

The trial court found that payment had been made and therefore concluded that defendant was not indebted to plaintiffs. Judgment was ordered for defendant. Plaintiffs moved for amendment of the findings of fact and conclusions of law or, in the alternative, for a new trial. This

motion was denied. This appeal by plaintiffs is from the denial of their alternative motion.[1]

■ Plaintiffs contend in this appeal that, where the indebtedness is admitted, defendant has the burden of proving payment and that as a matter of law defendant has failed to sustain that burden of proof; that the trial court erred in disregarding the direct, unimpeached testimony of decedent's accountant, Gustave J. Kvaase; and that the trial court erred in basing its decision upon considerations outside the record; namely, the community standing of defendant and his wife.

Plaintiffs are correct in stating that defendant has the burden of proving payment of his admitted indebtedness to decedent. Merrill v. Zimmerman, 152 Minn. 333, 188 N. W. 1019. Here, defendant clearly sustained his burden of proof by the direct testimony of Mrs. McLean that she personally paid decedent the $13,000; the testimony of Donald M. Ryan that he had seen Mrs. McLean place the several stacks of currency into the paper bag; and the testimony of William J. McLean that decedent had telephoned him and had told him that he had made a full settlement of the $900 indebtedness he owed the Town House. Since the foregoing testimony was of itself sufficient to sustain defendant's burden of proof, the subsequent introduction of evidence to the contrary gave rise to nothing more than an issue of fact as to whether the evidence as a whole sustained the trial court's findings.

■ In arguing that defendant has failed to sustain his burden of proof, plaintiffs ask this court to disregard the testimony of Mrs. McLean because of its alleged inherent improbabilities and characteristics of incredibility. Without Mrs. McLean's testimony, we would agree with plaintiffs that defendant would be unable to sustain his burden of proof. It is well settled that the function of this court is not to weigh the credibility of witnesses. Credibility of witnesses is for the trier of fact.[2] It is of course elementary that, where the testimony of a witness

---

[1] Only that part of the order denying a new trial is reviewable on appeal. However, on such review, any finding of fact may be challenged as not sustained by the evidence. Graphic Arts Educational Foundation, Inc. v. State, 240 Minn. 143, 59 N. W. (2d) 841; State, by Burnquist, v. Bollenbach, 241 Minn. 103, 63 N. W. (2d) 278.

[2] Carpenter v. Birkholm, 242 Minn. 379, 65 N. W. (2d) 250; Bicanic v.

is "so improbable or contains so many contradictions as to furnish substantial reasons for believing it to be false, such testimony may be disregarded." Campbell v. Nelson, 175 Minn. 51, 54, 220 N. W. 401, 403. This rule, however, is to be applied by the finder of fact not by this court on appeal. Golob v. Buckingham Hotel, 244 Minn. 301, 69 N. W. (2d) 636. In Clark v. Chicago & N. W. Ry. Co. 226 Minn. 375, 381, 33 N. W. (2d) 484, 487, we said:

"* * * whether the case made by the evidence of a party is one of fabrication or whether his version thereof is so inherently improbable as to be unworthy of belief is primarily for the jury and the trial court to determine. Only in exceptional cases will this court so declare, and then only when the question is free from doubt."[3]

While this court agrees with plaintiffs that defendant's story has many characteristics of suspiciousness and improbability and to a certain extent is lacking in believability, we cannot say that defendant's story is "so inherently improbable as to be unworthy of belief" so that we would be justified in totally disregarding Mrs. McLean's direct and unimpeached testimony that she paid decedent $13,000.

Plaintiffs, in essence, are trying to persuade this court to consider the evidence de novo—weigh the credibility of defendant's and Mrs. McLean's testimony (and the testimony of corroborating witnesses); disregard it as the trial court could have done but did not do; and then, having disregarded their testimony, rule that the findings of fact and conclusions of law are not supported by the evidence.

■ It is of course well settled that findings of fact based on conflicting evidence will not be disturbed on appeal unless manifestly and palpably contrary to the evidence as a whole; even though we might find the facts to be different if we had the factfinding function.[4] Since the trial court found Mrs. McLean's testimony to be credible, we cannot ignore it even though we recognize that the conflicting evidence would

J. C. Campbell Co. 220 Minn. 107, 19 N. W. (2d) 7; 1 Dunnell, Dig. (3 ed.) § 411.

[3] Accord: Rosenblatt v. Chicago, M. & St. P. Ry. Co. 115 Minn. 108, 109, 131 N. W. 1060, 1061.

[4] Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, 6 A. L. R. (2d) 176.

sustain a finding for either plaintiffs or defendant. Where it appears that the evidence as a whole justifies a finding either way, it is useless to raise the question of the sufficiency of the evidence on appeal. 1 Dunnell, Dig. (3 ed.) § 415. Since the trial court's findings are not manifestly and palpably contrary to the evidence as a whole, we must affirm such findings on this appeal.

Although not assigned as error, plaintiffs urge another reason why we should discredit and disregard Mrs. McLean's testimony. They contend that, while M. S. A. 595.04, the so-called "dead man's" statute, is not directly applicable to her testimony concerning her conversations with decedent, her direct interest in the outcome of this lawsuit nevertheless is so great that the historical basis for the "dead man's" statute should apply (that of excluding all testimony from a party to the action concerning a conversation with a decedent because of its probability of fabrication) and should cast such grave doubts upon the believability of Mrs. McLean's testimony as to render it of no value at all. Plaintiffs argue that Mrs. McLean's temptations to falsify were as great as those of defendant.[5] The answer again is, of course, that the value and weight to be given Mrs. McLean's testimony is to be judged solely by the trier of fact.

Somewhat related to plaintiffs' attack on the trial court's findings is their argument that the trial court was *bound* to accept as true the direct, positive, and unimpeached testimony of Gustave J. Kvaase and that any finding contrary to Kvaase's testimony was error. Kvaase testified that decedent, 2 days before his death, had told him that defendant still owed him the money on the Town House agreement. Plaintiffs' argument cuts both ways in view of the fact that the testimony of defendant (that his wife had told him of the payment), of Mrs. McLean (that she had made the payment), of William J. McLean (that decedent had told him that he had settled the $900 indebtedness, thereby corroborating Mrs. McLean's version of the payment arrangement), and of Donald M.

---

[5]In Cocker v. Cocker, 215 Minn. 565, 10 N. W. (2d) 734, this equal-temptation concept was the basis for excluding the testimony of the party's wife. That case, however, has been strictly limited to cases relating to realty, where the spouse has a legal, immediate interest in the subject of the lawsuit. See, Chard v. Darlington, 243 Minn. 489, 68 N. W. (2d) 405.

Ryan (that Mrs. McLean h'ad put the bundles of cash in the bag) is all just as direct, positive, and unimpeached. According to plaintiffs' contention, the trial court therefore ought to be *bound* to accept their testimony. It is in just such circumstances, where there is conflicting evidence, where each party's testimony is direct, positive, and unimpeached, that pure questions of fact arise to be resolved by the trier of fact. Clearly, then, the trial court committed no error in not making findings directly in accordance with the testimony of Mr. Kvaase.

The final argument raised by plaintiffs on this appeal is that the trial court erred in basing its findings, at least in part, on considerations not in evidence. In the trial judge's closing remarks he stated that he could not possibly disregard the positive testimony of defendant's witnesses "in view of their standing in the community, and their business experience and say that they have all deliberately lied * * *." The statement concerning the business experience of defendant and his witnesses is clearly demonstrated by the record. There is, however, nothing in the record concerning the standing in the community of these witnesses. It is the rule in this state that the trial court may not decide a case on his own knowledge of the facts or of a party. He must take only the evidence presented at the trial.[6] It appears here, however, that the trial court's reference to the community standing of defendant's witnesses was merely an inadvertent inference drawn from the evidence establishing their obvious business experience and extensive local business dealings. Obviously it was not a material evidentiary factor which controlled the court's findings of fact and was therefore not a prejudicial error which justifies the granting of a new trial.

The order of the trial court is affirmed.

Affirmed.

---

[6]State ex rel. Kelly v. Probate Court, 83 Minn. 58, 85 N. W. 917; Gerber v. Gerber, 241 Minn. 346, 64 N. W. (2d) 779.