## SYLVIA MOURNING AND ANOTHER v.
## INTERLACHEN COUNTRY CLUB.

158 N. W. (2d) 244.

April 5, 1968—No. 40,746.

*Cragg & Barnett,* for appellant.

*Pierro, Johnson & Pieri* and *Errol K. Kantor,* for respondents.

Heard before Knutson, C. J., and Nelson, Otis, Sheran, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeal from an order of the District Court of Hennepin County denying defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Plaintiff Sylvia Mourning began work for defendant, Interlachen Country Club, as a waitress about April 1, 1963. On May 30, 1963, defendant opened its outdoor pool for swimming and gave its employees permission to swim in it after 10 p. m. If all conflicts in the evidence are resolved in favor of the prevailing parties below, the facts appear to be as follows: Sylvia completed work at the club at about 10 p. m. on May 30, 1963, and changed into her street clothes. She left the club by the employees' entrance with three companions and proceeded to-

ward the parking lot. The attention of Sylvia and her friends was drawn by noises coming from the direction of the pool area and one suggested they go to see who was swimming. Sylvia and her companions went to the pool area, which is enclosed by a fence. She had never been in the pool area before that evening and had never looked at the pool nor even had the area described to her. As Sylvia agreed, the pool area was completely strange to her.

Upon arriving at the location of the pool, Sylvia and her companions proceeded through an opening in the fence. She observed there were no lights in the area at all and that it was so dark she could not see the pool, although she knew there was one in the area and could hear persons splashing about in it. Sylvia was also unable to see the steps that led into the pool area from the gate in the fence and asked that one of her companions assist her in going down. After entering the pool area, she was still unable to see the pool and had no idea how close she was to it.

The pool is L-shaped. It was located to Sylvia's left. After talking to two of their fellow employees who had been swimming, one of Sylvia's companions suggested that they leave. Because of the darkness Sylvia could not see her companions as they left to go out of the pool area. She, nevertheless, did not ask for assistance but followed in the general direction of the sounds of her friends' voices. She took about five or six steps and fell into the pool at about the point where the pool takes a right-angle turn. As a result of this fall, she sustained injury to her leg and ankle.

Two of her companions testified that Sylvia stated that she was "blind in the dark." Sylvia also admitted that she did not intend to use the pool for swimming or any recreational purpose, had gone into the area merely because of curiosity, and had never fallen on the path to the parking lot. It thus appears that Sylvia placed herself in a dark, unfamiliar area and chose to continue in that area although she could have retraced her entrance path safely. She apparently "went on her own" without the help of her friends who had assisted her into the dark area. She knew the pool was somewhere nearby because she could hear it. Her testimony indicated that as long as she was standing still, she felt safe.

In this action Sylvia sought to recover for injuries sustained in her fall into the pool. Her husband sought consequential damages. After trial the jury returned a verdict in their favor in the sum of $2,000. Defendant moved upon the minutes of the court and all the files, records, and exhibits therein, and a partial transcript of the proceedings, for an order setting aside and vacating the jury's verdict and granting judgment notwithstanding the verdict on the ground that said verdict was not justified by the evidence and was contrary to law. In the event this motion were denied, defendant moved for an order setting aside and vacating the verdict and granting a new trial. On appeal from denial of this motion the main issue appears to be whether the trial court should have directed a verdict for defendant on the ground that Sylvia was contributorily negligent as a matter of law. Other issues appear to be (1) whether plaintiffs sustained their burden of proof as to defendant's negligence; (2) whether Sylvia was guilty of contributory negligence as a matter of law; and (3) whether the court erred (a) in instructing the jury that defendant would be responsible for maintenance of any "artificial or dangerous condition"; and (b) in failing to define "special circumstances" which might excuse Sylvia's conduct.

The briefs submitted by the parties make it plain that they agree that Minnesota follows the "step-in-the-dark" rule. This rule is discussed in Annotation, 163 A. L. R. 587. This annotation includes Minnesota among those states which apply the rule, citing Plahn v. Masonic Hall Bldg. Assn. 206 Minn. 232, 288 N. W. 575; Huyink v. Hart Publications, Inc. 212 Minn. 87, 2 N. W. (2d) 552, involving a meter reader; Sartori v. Capitol City Lodge, 212 Minn. 538, 4 N. W. (2d) 339, involving an invitee of a tenant operating a business in the defendant's building. In Malmquist v. Leeds, 245 Minn. 130, 134, 71 N. W. (2d) 863, 866, this court held that it is the general rule in Minnesota that—

"* * * one who is injured while walking in an unfamiliar situation in total darkness is, in the absence of special circumstances, guilty of contributory negligence as a matter of law."

See, 13B Dunnell, Dig. (3 ed.) § 6993.

From this statement of the rule it becomes clear that there are three essential elements to a proper application of the step-in-the-dark rule:

(1) Plaintiff must enter an area which is unfamiliar to him; (2) the area must be in total darkness or at least the plaintiff must be unable to see where he is going; and (3) there must be an absence of "special circumstances" that would prevent the application of this rule.

In the instant case it is clear that the first two elements are present. Sylvia testified that she had not ever been in the pool area and had not even looked in at any time prior to the date of the accident. Secondly, Sylvia testified that it was so dark that she could not see the steps leading into the pool area, the pool itself, or her companions as they left. The only real question remaining is whether there were special, mitigating circumstances which would prevent an application of the rule. We have said no absolute rule can be stated as to what will constitute "special circumstances." In Huyink v. Hart Publications, Inc. 212 Minn. 87, 91, 2 N. W. (2d) 552, 554, this court said:

"Venturing in the dark does not constitute contributory negligence as a matter of law in all cases. The question is whether the plaintiff thereby unreasonably exposes himself to risk of injury. In some situations, we, as well as other courts, have held that the question presents a fact issue for the jury under the particular circumstances."

In the Huyink case the accident occurred about 4:30 p. m. when plaintiff was injured by falling into a pit in the basement of defendant's building, where he had gone for the first time to read a water meter in the course of his duties as an employee of the village of Long Prairie. When plaintiff entered the building he requested one of defendant's employees, who was also the mayor of the village, to direct him to the water meter and was told to find it the best he knew how. Plaintiff then entered an inside room from which a stairway led to the basement. The basement and the stairway leading to it were dark. Any movement in the basement in the dark was attended with danger because of the presence there of a furnace pit about 5 feet deep. With light, movement was safe. At the head of the stairway was a post on which there was an electric switch for the basement lights located about 3½ feet above the floor. This switch was visible without the aid of artificial light. There were two ceiling lights with drop cords, one of which was about 6 feet and the other

about 12 feet from the head of the stairs. These were clearly visible and accessible. There were three lights in the basement, one with a 200-watt bulb and the others with 100-watt bulbs, which could be turned on by the switch on the post. When turned on they furnished adequate light.

Plaintiff had a flashlight, which he used at the head of and in descending the stairs to look for basement lights, but he found none. When he was asked if he had looked for the switch on the post, he said (212 Minn. 88, 2 N. W. [2d] 553), "I looked but not that high." Although it was dark on the stairway and in the basement, he ventured down, using the flashlight to furnish illumination. After reaching the basement, he made no further effort to find lights. He located the basement floor by the use of the flashlight and then stepped on it. He continued to flash the light along the wall in search of the water meter and started to walk to his right in the dark without lighting up the floor as he went and not knowing where he was stepping. After he had gone only a step or two, he fell into the furnace pit, the existence of which he had no knowledge.

The only questions for consideration in the Huyink case were whether plaintiff was guilty of contributory negligence as a matter of law and whether, as suggested by the argument, the verdict could be sustained upon the theory that the jury obtained evidence to support the verdict by a view of the premises. This court held on those facts in the Huyink case (212 Minn. 89, 2 N. W. [2d] 553):

"A person who proceeds in an unfamiliar situation where by reason of darkness he is unable to observe where he is going and what may be the obstructions to his safe progress is, in the absence of the stress of special circumstances, guilty of contributory negligence as a matter of law upon the ground that by such conduct he exposes himself to unreasonable risk of injury."

See, Plahn v. Masonic Hall Bldg. Assn. *supra;* Murray v. Albert Lea Home Investment Co. 202 Minn. 62, 277 N. W. 424; Johnston v. Tourangeau, 193 Minn. 635, 259 N. W. 187; Wentink v. Traphagen, 138 Neb. 41, 291 N. W. 884.

In Barth v. Klinck, 360 Pa. 616, 618, 62 A. (2d) 841, 842, the Pennsylvania Supreme Court said:

"* * * As a rule, darkness is, in itself, a warning to proceed either with extreme caution or not at all. [Citation omitted.] Accordingly, it is generally held, in the absence of evidence of a compelling necessity, that one who follows an unfamiliar course in the dark or steps into darkened and unfamiliar space, relying upon his sense of touch instead of obtaining and using adequate lighting facilities, and sustains personal injuries, is guilty of contributory negligence as a matter of law."

In the Barth case the trial court at the conclusion of the evidence on liability entered a compulsory nonsuit, which was affirmed on appeal.

In Night Racing Assn. v. Green (Fla.) 71 So. (2d) 500, the plaintiff alleged that he was injured by falling into a dangerous pit located in a parking area on property controlled by the defendants and that they were liable to him because of their failure to provide safe covers for the pit. According to the plaintiff's own evidence he parked in an area off a dirt road at the suggestion of two companions but not of defendants, that this area was so dark the pit could not be seen, and that he had never been in that area before. He proceeded at a fast walk to catch up with his companions and fell into the pit. The road over which plaintiff had traveled was a dirt road at the end of the pavement, the area where he parked his car was off from this dirt road, and there was no evidence from anyone that it was maintained by the defendants for a parking area. The Florida Supreme Court held that there was no conflict in the testimony to justify a submission of the question of contributory negligence to the jury and further said (71 So. [2d] 503):

"In the case at bar we have a man in possession of all of his faculties, parking off from a dirt road in an area he had never been in before, and after so parking, walking at a fast rate of speed over unfamiliar territory in 'pitch darkness' in order to catch up with his companions, and who fell into a pit or hole and was hurt. It is very clear that he failed to use any care or caution for his own safety or protection and that his injuries are the result of his own negligence."

In Mitchell v. A. J. Bayer Co. 126 Cal. App. (2d) 501, 272 P. (2d) 870, the plaintiff, an ironworker, was working on a Sunday on windows in a hotel building under construction and fell down a flight

of stairs after stepping into darkness through a hole in a partition. Previous to his fall, plaintiff had not been in that particular part of the hotel nor had he used the stairway. There was evidence that inside the opening through which plaintiff passed the platform was visible, from which it could be inferred that plaintiff did not look before entering. Plaintiff contended that the hall and stairway should have been lighted. All areas were lighted for workmen as they had occasion to use them. There was, the court said, no reason to anticipate on the Sunday in question that the men working on the windows on other floors would have reason to use the hall and stairway. The court in that case held that where an invitee on premises, being unfamiliar with them, proceeds into a place of impenetrable darkness and falls into an aperture and is injured, as a matter of law he does not exercise ordinary care for his own safety and hence any injury he receives is the result of his own contributory negligence.

Plaintiffs contend that, regardless of Sylvia's legal status at the time of her injury, the finding by the jury that defendant was negligent in the performance of its duty of care toward her was amply supported by the evidence. They also contend she was a business visitor, citing Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247; Meyer v. Mitchell, 248 Minn. 397, 80 N. W. (2d) 450; and Eklund v. Kapetas, 216 Minn. 79, 11 N. W. (2d) 805. Defendant contends that the court erred in refusing to instruct the jury, as defendant requested, that Sylvia's status at the time of the accident was that of a "mere licensee" since she had departed from her regular route for going home after she had finished her duties.

There is only one particular in which one who holds his land open for the reception of business visitors is under a greater duty in respect to its physical condition than a possessor who holds his land open to the visits of a gratuitous licensee. The possessor has no financial interest in the entry of a gratuitous licensee; and, therefore, such a licensee is entitled to expect nothing more than an honest disclosure of the dangers which are known to the possessor. A business visitor, however, is entitled to expect that the possessor will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions. See, Restatement, Torts, § 343, *comment a;*

Strong v. Shefveland, *supra;* Thayer v. Silker, 267 Minn. 268, 126 N. W. (2d) 263.

We think under the circumstances shown by the record herein that Sylvia's status at the time of the accident was that of a gratuitous licensee, but that the court's failure to so charge is immaterial because whatever her status she was contributorily negligent as a matter of law.

It appears to be the contention of plaintiffs that the governing case on the issue of Sylvia's contributory negligence is Malmquist v. Leeds, 245 Minn. 130, 71 N. W. (2d) 863. There the plaintiff did not know the danger existing in a changed condition in an area previously familiar to her, so the case is not controlling of the instant case. Plaintiffs contend that Sylvia relied on the greater familiarity of her companions with the area in question and was trying to follow their course, factors which they urge are special circumstances preventing application of the step-in-the-dark rule. We do not think these factors establish that she was acting under the stress of special circumstances warranting finding negligence of defendant the proximate cause of her injuries or excusing Sylvia on her part from contributory negligence in bringing about the accident. The step-in-the-dark rule was correctly stated by the trial court in its charge. However, it was left to the jury to determine without definition or other instruction what the "special circumstances" might be. As we see it, there was no conflict in the testimony to justify a submission of the question of contributory negligence to the jury. The judgment must be reversed. Defendant is entitled to have judgment entered in its favor notwithstanding the verdict.

Reversed and judgment ordered for defendant.