KATHERINE E. CONROY v.
KLEINMAN REALTY COMPANY AND OTHERS.

179 N. W. (2d) 162.

July 17, 1970—No. 41986.

62

*Harry A. Paulet, Daniel John O'Connell,* and *Daniel Dennis O'Connell,* for appellant.

*Baglio & Buckley* and *Eugene D. Buckley,* for respondents.

Originally heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ. Reconsidered en banc upon the briefs.

PETERSON, JUSTICE.

Plaintiff, while looking for the basement apartment of the caretaker, fell down the steps into the boiler room of an apartment building owned by defendants. A jury found, by answer to special questions, that defendants were causally negligent and that plaintiff was free of any contributory negligence directly causing her injury. The trial court vacated the jury's findings of fact and ordered judgment for defendants on the sole ground, stated in its memorandum, that plaintiff was contributorily

negligent under the so-called "step-in-the-dark rule." By supplemental order, but without other explication, the trial court further ordered that in the event its order for judgment notwithstanding the verdict were reversed upon this appeal, a new trial would be had on all the issues. This appeal is from those orders and the judgment thereafter entered for defendants.

Plaintiff, then a 71-year-old woman, together with a woman companion, went to defendants' apartment building on June 26, 1966, to visit a tenant. Unable to locate the tenant, they sought out the caretaker in his basement apartment. According to plaintiff's companion, they knocked on the caretaker's door and, finding no one home, retraced their steps, thus passing the boiler room door on their left. She did not see what happened next, for plaintiff "got away from me" and "[s]uddenly she was gone."

Plaintiff, the only witness to her fall, testified that she opened the boiler room door without knowing what was on the other side but with the "thought [that] I was opening a door into another hallway." The door actually led to a 12-inch wood threshold and five wood steps descending to the concrete floor of the boiler room. She fell "quite aways down" the stairs and was injured.

The area of the basement in which the doors to the caretaker's apartment and the boiler room were situated was adequately lighted. Except for whatever illumination came from the hallway, there was no artificial or natural light beyond the door. Her companion, in answering plaintiff's call for help, could not see where plaintiff lay "because it was pitch dark" until she turned on the lights, the switch for which was to the left, inside the door.

The troublesome and crucial issue of fact as it relates to the step-in-the-dark rule is whether plaintiff actually stepped into the unfamiliar, dark area. Plaintiff testified that she made no step forward: "I turned the knob and the door went in, and I went down." Cross-examination made this version even more clear:

"Q. * * * And when you did start to open the door, were you able to see anything inside the area ahead of you?

"A.    I went down so quickly I didn't know whether there was any light or not. Didn't expect that.

"Q.    So, would it be true that you opened the door and took a step ahead?

"A.    No.

"Q.    You didn't take any step?

"A.    No.

"Q.    Well, is it your testimony then that you—you were in front of the door; you opened it up, and then fell?

"A.    Then I went down.

"Q.    Didn't you take a step after you opened the door?

"A.    No.

"Q.    Were you off balance at all, Miss Conroy?

"A.    No.

"Q.    All right. And as you say you walked up to the door, turned the knob, opened it easily, and as you opened it you fell without taking any steps?

"A.    Uh huh."

It is clear, moreover, that the jury in finding plaintiff free from contributory negligence accepted plaintiff's testimony that she had made no step forward. Plaintiff's counsel, expressly anticipating the court's instruction concerning the step-in-the-dark rule, argued to the jury:

"I submit that the door started to open and down she went. * * * She lost her balance and she had no time to look for any light. * * *

* * * * *

"* * * Did she step—did she make a step into the dark, Ladies and Gentlemen? Would you or I do that? Would anybody do that? Open a door and take a step in total darkness? Is that a logical thing to assume? * * *

* * * * *

"* * * As I have already told you, it seems utterly fantastic that she would have taken a step in the dark; and, secondly, if

she did take a step in the dark, were there any special circumstances to warrant it.

"These special circumstances, I don't think we have to consider. It's that step in the dark, which doesn't make sense."

The trial court, in granting judgment in favor of defendants notwithstanding the verdict for plaintiff, did so on the sole ground that, under the step-in-the-dark rule, plaintiff's contributory negligence was a direct cause of her fall. The court observed that the plaintiff "could offer no testimony as to how the fall occurred, and yet it is apparent that she must have stepped forward upon opening the door to the boiler room."

The issue, then, is basically one of fact. It is unquestioned that if, as a matter of fact, plaintiff, a gratuitous licensee, had volitionally entered the boiler room the step-in-the-dark rule would operate to bar her recovery.[1] If, however, plaintiff simply opened the door and, in so doing, lost her balance and plunged into the boiler room, wholly without taking such step forward, the step-in-the-dark rule may not be invoked to bar her recovery.

We reluctantly reverse the judgment, for the issue at best is extremely close. Defendants, we conclude, did not meet the burden of proof on the defense of contributory negligence. The jury, in the absence of contrary evidence for the defendants, credited plaintiff's testimony as to how the fall occurred. We are aware that her testimony was that she was not "off balance at all" as

---

[1] Mourning v. Interlachen Country Club, 280 Minn. 94, 158 N. W. (2d) 244; Plahn v. Masonic Hall Bldg. Assn. 206 Minn. 232, 288 N. W. 575. See, also, Huyink v. Hart Publications, Inc. 212 Minn. 87, 2 N. W. (2d) 552; Sartori v. Capitol City Lodge, 212 Minn. 538, 4 N. W. (2d) 339; Murray v. Albert Lea Home Investment Co. 202 Minn. 62, 277 N. W. 424; Lyman v. Recreational Activities, Inc. 286 Minn. 308, 175 N. W. (2d) 498. There were no special circumstances to invoke the different results in Iverson v. Quam, 226 Minn. 290, 32 N. W. (2d) 596; Malmquist v. Leeds, 245 Minn. 130, 71 N. W. (2d) 863; Coenen v. Buckman Bldg. Corp. 278 Minn. 193, 153 N. W. (2d) 329.

she opened the door and that the door opened "easily,"[2] but we cannot hold as a matter of law that her actions relevant to the issue of a step in the dark, as she related them to the jury, were a physical impossibility. Although the doubtful probability of plaintiff's account of her fall inheres from all the circumstances surrounding it,[3] we are nevertheless committed to the principle that the credibility of witnesses and the inferences fairly to be drawn therefrom are in the exclusive province of the trier of fact.[4]

We likewise must reverse the conditional order for a new trial under the principles announced in McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 341, 154 N. W. (2d) 488, 501. Although the trial court did not articulate the grounds upon which that order was based, it is clearly apparent that it was for the same

---

[2] Defendants' caretaker, on the other hand, testified that the door sagged and dragged on the threshold, making it necessary to lift up on it and push very hard to open it.

[3] Plaintiff's testimony was confused as to other relevant details of the occurrence, relating primarily to the trial issue of defendants' causal negligence. As an example, plaintiff recalled the boiler room door as a varnished door with a brass doorknob, having no other distinguishing characteristics. Instead, according to the photographs and the testimony of the other witnesses, the door was apparently white-washed; it had no doorknob but hooks on the door and adjacent doorjamb, a few inches above the vacant hole for a doorknob (*the undisputed use of the hooks was to latch the door with a chain and lock for purposes of safety but the door was not so latched on the date of the fall*); and on the upper third of the door were posted a second-class engineer's license for boiler operation and three annual certificates of steam boiler inspection. The evidence as to defendants' causal negligence is not strong, particularly in view of the jury's apparent finding as to how the fall occurred. The trial court's order was not based upon the absence of causal negligence, however, nor did defendants make this an issue upon appeal.

[4] First Trust Co. of St. Paul v. McLean, 254 Minn. 75, 78, 93 N. W. (2d) 517, 519; Clark v. Chicago & N. W. Ry. Co. 226 Minn. 375, 381, 33 N. W. (2d) 484, 487; Zuber v. N. P. Ry. Co. 246 Minn. 157, 165, 74 N. W. (2d) 641, 649.

reason as the order for judgment notwithstanding the verdict.[5] See, also, Ginsberg v. Williams, 270 Minn. 474, 135 N. W. (2d) 213.

Reversed with directions to enter judgment upon the verdict.

KNUTSON, CHIEF JUSTICE (dissenting).

I respectfully dissent. The physical facts present two alternatives: Either plaintiff stepped into the dark room, in which event the step-in-the-dark rule applies, as the trial court held, or she did not step into the room, in which event any negligence of defendants, if there is such, could not possibly be a proximate cause of the injuries.

OTIS, JUSTICE (dissenting).

I join in the dissent of the chief justice.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[5] We have, in the course of our discretionary review of the conditional order, considered two contentions of the defendants in support of granting a new trial: (a) That plaintiff's counsel engaged in improper argument to the jury with respect to a "danger" sign placed on the boiler room door subsequent to the date of the fall; and (b) that the trial court's instructions impermissibly informed the jury as to what the results of its answers to the special questions would be. As to the former, the photographs of both parties disclosed the danger sign, but upon their introduction the jury was informed that they were not to be considered as part of the evidence; and in the brief, isolated instance of improper argument the court, upon objection, promptly cautioned counsel, in the presence of the jury, against such argument. As to the latter, we do not think the instructions, considered as a whole, compel such construction; and, in any event, defendants made no objection to the instructions as given. There was, we conclude, no prejudicial error.